JOSEPH OLIVE *ET AL.,* PLAINTIFFS-APPELLANTS, v. GRACELAND SALES CORPORATION *ET AL.,* AND GEORGE F. KUGLER, JR., ATTORNEY GENERAL OF NEW JERSEY, DEFENDANTS-RESPONDENTS.

Argued April 24, 1972—Decided July 17, 1972.

*Mr. Elliot M. Baumgart* argued the cause for appellants (*Mr. Robert L. Martin,* on the brief; *Essex County Legal Services Corp.,* attorneys).

*Mr. Melville D. Miller, Jr.,* argued the cause for New Jersey State Office of Legal Services, *amicus curiae* (*Mr. James J. Ciancia,* on the brief).

*Mr. Douglas J. Harper,* Deputy Attorney General, argued the cause for respondent George F. Kugler, Jr., Attorney General of New Jersey.

*Mr. Stephen L. Ritz* argued the cause for respondents Graceland Sales Corporation, *et al.* (*Messrs. Weltchek, Prupis & Weltchek,* attorneys).

The opinion of the Court was delivered by

WEINTRAUB, C. J. This is a class action brought by private individuals charging fraud and irregularities in the sale of grave sites. The Attorney General was named a defendant because of his official responsibility with respect to cemeteries. The Attorney General filed a cross-complaint against the defendants alleging violations of the Consumer Fraud Act, *N. J. S. A.* 56:8–1, *et seq.* The trial court denied plaintiffs' motion under *R.* 4:32–2(a) that they be permitted to maintain their suit as a class action. Plaintiffs sought leave to appeal to the Appellate Division from the denial of a class action. That motion was denied. Plaintiffs then moved before us for leave to appeal and we granted the motion.

██ The denial of authorization to maintain the suit as a class action was apparently based on the single circumstance that the Attorney General had filed a cross-complaint. That fact, however, could not alone justify the order. Neither the Consumer Fraud Act, just cited, *N. J. S. A.* 56:8–1 *et seq.,* nor the statute creating the Office of Consumer Protection in the Division of Law of the Department of Law and Public Safety, *N. J. S. A.* 52:17B–5.6, *et seq.,* purports to vest in the Attorney General the exclusive power to act in the area of consumer fraud. Whether a private class action should be authorized remains subject to our class-action rule, *R.* 4:32–1 *et seq.* In this connection we note that the Consumer Fraud Act was amended in 1971 (*c.* 247, § 7, *p.* 1177) to authorize a private action by an individual damaged by a violation of that statute. That amendment does not expressly or by implication bar an individual from suing for a class for violations of the statute or for wrongs actionable without the aid of that statute. Nor,

on the other hand, does that amendment itself mandate that a private class action should be authorized. The terms of our class-action rule still control.

In *Riley v. New Rapids Carpet Center*, 61 *N. J.* 218 (1972), we said that "There are advantages when a public official is the plaintiff, but, as was noted in *Kugler v. Romain, supra*, 58 *N. J.* 522 at 540, staff limitations are such that the private class action must be accepted if the objectives are to be realized in this area." When the Attorney General sues for a class, there may be no need for a private class action if the class is the same and the relief sought by the Attorney General will adequately deal with the grievance alleged by the private suitor. But here the Attorney General does not purport to deal with the whole subject, and this being so, a private class action should not be denied because of the Attorney General's activity. The Attorney General agrees, pointing out that the substantive bases and the remedies sought by plaintiffs are materially different from the bases advanced and the relief sought by him.

The complaint alleges (1) fraudulent misrepresentations in the sale of burial plots; (2) legal infirmities in the written contracts; and (3) fraudulent imposition upon buyers in the entry of default judgments against them. A comparison of the complaint and the Attorney General's cross-complaint demonstrates that the cross-complaint does not cover the whole ground.

As to fraudulent misrepresentations in the sale of plots in the past, the Attorney General does not seek to maintain a class action. Rather he sues solely on behalf of named individuals. Those named individuals are some of the plaintiffs, but the Attorney General seeks relief only as to them and upon the specific misrepresentations which the Attorney General alleges. Nor, at the moment, do plaintiffs ask certification of a class action based upon sales misrepresentations. Although plaintiffs' complaint charges that others were also defrauded in the sale of the plots, they tell us they

did not assert "in the trial court, the existence of a class based upon fraudulent misrepresentations" but do reserve the right to seek to maintain a class action in that regard "if further discovery reveals that the fraudulent misrepresentations were substantially identical in nature"[1] and satisfy the prerequisites of a class action.

With respect to the attack upon the face of the contracts themselves, the Attorney General assails three of the four forms defendant used while plaintiffs attack all four. The Attorney General alleges the three forms of contract fail to disclose the total dollar amount of the service or interest charge and hence fail to disclose the total dollar obligation of the prospective consumer. This failure is charged to constitute the suppression, concealment, and omission of a material fact in violation of *N. J. S. A.* 56:8–2. The relief sought as to all affected individuals is an order permanently restraining defendants from collecting or receiving any service or interest charge in any case in which the total dollar amount of such charge is not clearly set forth in the purchase agreement.

As to the three purchase contracts just mentioned, plaintiffs level the same attack advanced by the Attorney General

---

[1] The complaint alleged the following misrepresentations in door-to-door sales: (1) the contracts would not be binding until the customer visited the cemetery to select a specific grave site and that defendant would provide transportation to the cemetery to make the selection; (2) there would be no binding contract until the purchaser paid a deposit; (3) the purchaser would receive a reduction in price by supplying Graceland with the names of additional customers; (4) the burial and funeral costs were included in the purchase price; (5) an immediate purchase would result in a substantial saving over the "normal price" of a plot; (6) the "cash price" of the contract was the total cost when in fact it was not; (7) purchasers would be entitled to discounts at specified retail stores; (8) the sale was of multiple plots with a single interment space in each plot when in fact the purchaser received a single plot with multiple interment spaces; (9) the defendant's salesman was delivering a prize the purchaser won in a contest; (10) the transaction involved a down payment for the purchase of a home.

but add a further challenge of vagueness, and whereas the Attorney General seeks an injunction against collection of the service or interest charge, plaintiffs seek recission of the transactions. Plaintiffs allege the contracts are fatally vague and indefinite because they fail to set forth the total cost, including the total finance charges; fail to identify the burial plots; state the agreements are not binding until approved by defendant within a "reasonable length of time"; are ambiguous as to whether the subject is a single plot with multiple interment spaces, or multiple plots with single interment spaces. In addition, plaintiffs allege the contracts do not comply with the statute of frauds in that the plots are not identified. Plaintiffs suggest the purchasers under those contracts constitute an appropriate subclass.

The second subclass suggested by plaintiffs consists of purchasers who received the fourth form of contract, which the Attorney General does not attack because that form does set forth the service or interest charge. As to this group, plaintiffs make the same allegations as with respect to the first subclass, except the claim that the service or interest charge is not disclosed.

The third subclass proposed by plaintiffs and not involved in the Attorney General's cross-complaint consists of purchasers against whom default judgments have been entered. Plaintiffs allege a fraud upon those purchasers as well as upon the courts. Default judgments were entered in some 115 suits, all for the full amount of the balance due notwithstanding that the purchasers had not received delivery of the subject matter, that is, a deed for burial plots. It is charged that this fact was not revealed to the courts, and that on the contrary affidavits of proof referred only to the balance due on a promissory note or were so phrased as to suggest the subject matter was goods or chattels sold and delivered. Fraud is charged in the failure to tender a deed as a precondition for a judgment for the full balance and in the assertion that there were no set-offs or defenses to the actions.

As we said earlier, the trial court held that plaintiffs may not maintain a class action because the Attorney General entered the cause as a cross-plaintiff. For that reason, the trial court did not consider whether a class action would otherwise be appropriate. We see no problem of manageability arising from the fact that both plaintiffs and the Attorney General seek relief. As the record now stands, plaintiffs should be permitted to act for the three subclasses described above.

We note that we do not pass upon the legal sufficiency of any of the grounds plaintiffs allege. Ordinarily, the merits of a complaint are not involved in the determination as to whether a class action may be maintained, unless of course the allegations are patently frivolous. *Miller v. Mackey International, Inc.,* 452 *F.* 2d 424 (5 Cir. 1971); *Kahan v. Rosenstiel,* 424 *F.* 2d 161, 169 (3 Cir. 1970), *cert.* denied, *Glen Alden Corp. v. Kahan,* 398 *U. S.* 950, 90 *S. Ct.* 1870, 26 *L. Ed.* 2d 290 (1970); *Kalz v. Carte Blanche Corp.,* 52 *F. R. D.* 510, 513–514 (W. D. Pa. 1971); *Sol S. Turnoff Drug Distributors, Inc. v. N. V. Nederlandsche, etc.,* 51 *F. R. D.* 227, 229–232 (E. D. Pa. 1970); *City of Philadelphia v Emhart Corporation,* 50 *F. R. D.* 232, 234–235 (E. D. Pa. 1970); 3B *Moore's Federal Practice* (1969) § 23.45[3], *p.* 23–804 n.14. *Cf. Green v. Wolf Corporation,* 406 *F.* 2d 291, 301 n.15 (2 Cir. 1968), *cert.* denied, Troster, Singer & Co. v. Green, 395 *U. S.* 977, 89 S. Ct. 2131, 23 *L. Ed.* 2d 766 (1969).

We note, too, that some purchasers, especially those who have received deeds for burial plots, may not wish to have the transactions undone. This being so, measures should be taken to the end that a purchaser will not be subjected to an unwanted judgment of rescission. *R.* 4:32–1(a)(4) provides as a prerequisite for a class action that "the representative parties will fairly and adequately protect the interests of the class," and *R.* 4:32–1(b)(3) lists as a pertinent factor "the interest of members of the class in individually controlling the prosecution or defense of separate actions." This concern

for purchasers who might be disserviced by the suit should be reflected in the identification of the class, and then furthered by explicit notice to the members of the class, under *R.* 4:32–2(b), carefully informing the recipient of the consequences if he does not request exclusion from the class.

The order denying authority to maintain a class suit is reversed and the matter remanded for further proceedings consistent herewith.

*For reversal and remandment*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and MOUNTAIN—7.

*For affirmance*—None.