Dayna CRAFT, individually and on behalf of all others similarly situated, Plaintiff/Respondent,

v.

PHILIP MORRIS COMPANIES, INC., and Philip Morris Incorporated, Defendants/Appellants.

No. ED 85142.

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 16, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 22, 2005.

Application for Transfer Denied
May 30, 2006.

Stephen M. Tillery, Korein Tillery, Mark I. Bronson, Newman Bronson & Wallis, St. Louis, MO, Stephen A. Swedlow, Robert L. King, Swedlow & King, LLC, Chicago, IL, Gerson H. Smoger, Smoger & Associates, P.C., Oakland, CA, for respondent.

Alan C. Kohn, Robert F. Murray, Kohn, Shands, Elbert, Gianoulakis & Giljum, LLP, St. Louis, MO, Robert C. Heim, Judy L. Leone, Dechert LLP, Philadelphia, PA, Ezra D. Rosenberg, Ronni E. Fuchs, Dechert LLP, Princeton, NJ, for appellants.

Bruce D. Ryder, Thompson Coburn LLP, St. Louis, MO, Jonathan Bach, Stephen Wieder, Kronish Lieb Weiner & Hellman LLP, New York, NY, for Amicus Curiae National Association of Manufacturers.

Michael Ferry, Gateway Legal Services, Inc., St. Louis, MO, F. Paul Bland, Jr., Trial Lawyers for Public Justice, Washington, D.C., Mark Gottlieb, Tobacco Control Resource Center, Inc., Boston, MA, for Amicus Curiae National Association of Consumer Advocates, Trial Lawyers for Public Justice, Tobacco Control Legal

Consortium, Campaign for Tobacco–Free Kids.

## KATHIANNE KNAUP CRANE, Judge.

Plaintiff cigarette consumers filed this case as a class action to recover damages and other relief under the Merchandising Practices Act (MPA), section 407.025 RSMo (2000), against defendant cigarette manufacturers on claims arising out of defendants' marketing of "light" cigarettes. The trial court entered an order certifying a class under the MPA. After hearing defendants' motion for reconsideration, the trial court entered a new order certifying a class under the MPA, defining the class as follows:

> All residents of Missouri who purchased and consumed Defendants' Marlboro Lights cigarettes, in Missouri, at any time between the five years immediately preceding the filing of the Petition in this suit through the date the Court originally certified this suit as a class action (December 31, 2003), but who do not have a claim for personal injury resulting from the purchase or consumption of cigarettes.

Defendants appeal from this order. We strike those portions of the class action certification order that go to the merits of the case and affirm as so modified.

### FACTUAL AND PROCEDURAL BACKGROUND

On February 14, 2000, Missouri residents Jackie Bauer and Ed Ratliff (collectively, "plaintiffs") filed a class action petition in the Circuit Court of the City of St. Louis to recover damages and other relief under the MPA and the common law against Philip Morris USA Inc. (PMUSA) (formerly known as Philip Morris Incorporated) and Altria Group, Inc. (formerly known as Philip Morris Companies, Inc.) (collectively, "defendants") on behalf of themselves and Missouri residents who had purchased Marlboro Lights ("Lights").

In their allegations common to all counts, plaintiffs alleged that PMUSA falsely represented that Lights delivered lower tar and nicotine but failed to disclose that Lights contained ventilation holes that diluted the tar and nicotine per puff, as measured by the industry standard testing apparatus; failed to disclose that defendants intentionally manipulated the design and content of Lights in order to maximize nicotine delivery; failed to disclose that the defendants intended to fool the machine tests with these design changes; and failed to disclose that the design changes increased the harmful effects of tar.

Ms. Bauer and Mr. Ratliff alleged that they were longtime consumers of Lights, who were not aware of the misrepresentations until early 2000. Ms. Bauer and Mr. Ratliff sought to represent a class of all Missouri residents who purchased Lights from 1971 until the date of trial who did not have a personal injury claim resulting from the purchase or consumption of cigarettes.

In Count I, plaintiffs sought relief under the MPA.[1] They alleged that they and the proposed class members had entered into transactions with defendants when they purchased Lights and that during these transactions, defendants engaged in unfair or deceptive trade practices by: a) Falsely representing that Lights, when smoked

---

1. Section 407.025.1 provides:

 Any person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020, may bring a civil action ... to recover actual damages.

under normal use, contained lower tar and nicotine than regular cigarettes; b) failing to state the material facts that "changes in cigarette design and composition were intended to deliver lowered tar and nicotine levels under machine testing conditions while delivering heightened levels of these compounds when smoked by consumers;" c) "placing vent holes on the filter of light cigarettes that are covered or blocked by the smoker's lips or fingers, under the normal use, thereby negating the represented effects of [Lights];" d) "failing to mark the vent holes or make them visible to the naked eye such that smokers could attempt to correctly smoke the cigarettes to obtain the claimed reduced tar and nicotine;" e) "failing to disclose to consumers that smoking Defendants' cigarettes with the vent holes blocked results in the smoker receiving an increased amount of tar and nicotine;" f) "failing to instruct smokers, on the packaging or elsewhere, on how to correctly smoke the cigarettes to obtain the claimed lower tar and nicotine;" g) "failing to disclose to consumers that the techniques employed by Defendants to purportedly reduce the levels of tar in their Marlboro Lights actually increase the mutagenicity of the tar ingested by the consumer and thereby increase the levels of harmful toxins ingested by the consumer;" h) "manipulating the nicotine levels in their light cigarettes;" and i) failing to inform consumers about "the manipulation of the tobacco in Marlboro Lights by, *inter alia*, the addition of chemicals as well as Defendants' reasons for such manipulation."

Plaintiffs alleged that they were aggrieved and suffered ascertainable losses because they failed to receive the qualities and economic value of a low tar, low nicotine cigarette. They sought declaratory relief, a refund of the amounts paid to purchase Lights, attorneys' fees, punitive damages, and other equitable relief.[2]

On March 1, 2001, Ms. Bauer voluntarily dismissed her action without prejudice. On May 22, 2001, Mr. Ratliff moved to add Dayna Craft as a party plaintiff and to amend the caption and petition by interlineation to reflect her status as a party. The trial court granted the motion on May 23, 2001.

On December 10, 2001, Mr. Ratliff and Ms. Craft filed a motion for class certification pursuant to section 407.025.3 RSMo (2000) and Rule 52.08. Defendants filed a memorandum in opposition, along with exhibits.

On July 2, 2002, Mr. Ratliff dismissed his cause of action without prejudice. This leaves Ms. Craft as the sole remaining plaintiff in the case.[3]

On December 31, 2003, the trial court certified a Rule 52.08(b)(3) class of Missouri residents who had purchased Lights in Missouri since 1971 but who do not have a claim for personal injury relating to smoking. On January 28, 2004, defendants filed a motion for reconsideration. This motion was heard on April 28, 2004. On September 13, 2004, the trial court granted the motion in part and entered a new order limiting the class to those who had purchased Lights in the five years

**2.** In count II, plaintiffs sought a refund of benefits on a theory of unjust enrichment, and in count III, plaintiffs sought injunctive and equitable relief. However, the trial court found that plaintiffs did not formally seek class certification with respect to these two counts and did not meet their burden of proof showing certification would be appropriate. It therefore did not certify a class with respect to the claims made in counts II and III.

**3.** In the remainder of this opinion, we will use "plaintiff" to refer to Ms. Craft and her predecessors.

preceding the date of the original class action.

## DISCUSSION

### I. *Introductory Matters*

#### A. *Jurisdiction*

■ As an initial matter, we take up plaintiff's challenge to this court's jurisdiction. Plaintiff asserts that the appeal from the class certification order is not timely, for the reason that the appeal had to be taken, if at all, from the initial class certification order, which was not an appealable order when entered. Plaintiff maintains that if the August 28, 2004 amendment to section 512.020 made the initial order appealable, then the notice of appeal had to be filed within ten days of that date to be timely. We disagree.

■ The right to appeal is statutory. On December 31, 2003, when the initial order certifying a class was entered, class certification orders were interlocutory orders that could not be separately appealed. *Ralph v. American Family Mut. Ins. Co.*, 809 S.W.2d 173, 174–75 (Mo.App.1991). The December 31, 2003 order never became "final," but remained interlocutory. In fact, the order specifically recited that it was "subject to amendment or alteration." A trial court can always revisit and change a class certification order before it renders a decision on the merits. *Reinhold v. Fee Fee Trunk Sewer, Inc.*, 664 S.W.2d 599, 602 (Mo.App.1984).

On August 28, 2004, an amendment to section 512.020 went into effect that added orders granting or denying class action certification to the list of orders that may be appealed. Section 512.020(3) RSMo (2004 Supp.). On September 13, 2004, the trial court entered a new order that granted in part the motion for reconsideration and certified a more restrictively defined class. Defendants filed their notice of appeal ten days later, on September 23, 2004.

Defendants are not appealing from the initial order of December 31, 2003, but from the September 13, 2004 order entered on defendants' motion for reconsideration. This was a class certification order that could be appealed pursuant to section 512.020(3). It is irrelevant that the trial court had entered a prior interlocutory order certifying a class.

Rule 81.04(a) requires a party to file a notice of appeal no later than ten days "after the judgment or order appealed from becomes final." The September 23, 2004 notice of appeal was timely under this rule, and this court has jurisdiction.

#### B. *Standard of Review*

■ Class certification determinations under Rule 52.08 lie within the sound discretion of the trial court. *Union Planters Bank, N.A. v. Kendrick*, 142 S.W.3d 729, 735 (Mo. banc 2004); *State ex rel. American Family Ins. v. Clark*, 106 S.W.3d 483, 486 (Mo. banc 2003). We review an order granting or denying class action certification solely for abuse of discretion. *Koger v. Hartford Life Ins. Co.*, 28 S.W.3d 405, 410 (Mo.App.2000).

Because Missouri Rule 52.08 and Fed. R.Civ.P. 23 are identical, we may consider federal interpretations of Rule 23 in interpreting Rule 52.08. *Union Planters*, 142 S.W.3d at 735 n. 5; *Koehr v. Emmons*, 55 S.W.3d 859, 864 n. 7 (Mo.App.2001). The parties have also directed us to trial court decisions and unpublished appellate court opinions from other states granting or denying class action certification in consumer class action cases based on the marketing of Lights. These are neither binding nor persuasive precedent in this court. *See State v. Goodwin*, 43 S.W.3d 805, 814 (Mo. banc 2001).

 "Rule 52.08 is procedural rather than substantive." *Charles v. Spradling,* 524 S.W.2d 820, 824 (Mo. banc 1975). A trial court has no authority to conduct a preliminary inquiry into the merits of a lawsuit when it is determining whether that lawsuit may be maintained as a class action. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974). The issue is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether plaintiff has met the requirements for a class action. *Id.,* 417 U.S. at 178, 94 S.Ct. at 2153; *Reinhold,* 664 S.W.2d at 602. In *Eisen,* the Court reasoned that "a preliminary determination of the merits may result in substantial prejudice to a defendant, since of necessity it is not accompanied by the traditional rules and procedures applicable to civil trials. The court's tentative findings, made in the absence of established safeguards, may color the subsequent proceedings and place an unfair burden on defendant." *Id.,* 417 U.S. at 178, 94 S.Ct. at 2153.

 Further, the determination of whether a proper class exists does not depend on the merits of the cause of action. *Reinhold,* 664 S.W.2d at 602. A lawsuit may be properly certified as a class action, but may still be dismissed for failure to state a cause of action. *Id.; see also Olive v. Graceland Sales Corporation,* 61 N.J. 182, 189, 293 A.2d 658, 661 (1972). "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Miller v. Mackey International, Inc.,* 452 F.2d 424, 427 (5th Cir. 1971).

 Under some circumstances, a court may, consistent with *Eisen,* consider certain evidence relating to the merits to determine whether the prerequisites for class certification have been met. But, "[t]he court must look only so far as to determine whether, given the factual setting of the case, if the plaintiff[']s general allegations are true, common evidence could suffice to make out a prima facie case for the class." *Blades v. Monsanto Co.,* 400 F.3d 562, 566 (8th Cir.2005).

The preliminary inquiry at the class certification stage may require the court to resolve disputes going to the factual setting of the case, and such disputes may overlap the merits of the case. *See Szabo v. Bridgeport Machs., Inc.,* 249 F.3d 672, 676–77 (7th Cir.2001). *See also Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 166–69 (3d Cir.2001). Nonetheless, such disputes may be resolved only insofar as resolution is necessary to determine the nature of the evidence that would be sufficient, if the plaintiff's general allegations were true, to make out a prima facie case for the class. The closer any dispute at the class certification stage comes to the heart of the claim, the more cautious the court should be in ensuring that it must be resolved in order to determine the nature of the evidence the plaintiff would require. *Cf. Eisen,* 417 U.S. at 177–78, 94 S.Ct. 2140. *Id.* at 567.

 A conclusion that exceeds the determination required to dispose of a claim is considered gratuitous surplusage. *Western Sur. Co. v. Intrust Bank, N.A.,* 20 S.W.3d 566, 571 (Mo.App.2000). However, a trial court's improper consideration of the merits does not require reversal. A judgment that grants excessive relief may still be valid if, after the surplusage is stricken, the remainder disposes of the controversy. *Missouri Rock, Inc. v. Winholtz,* 614 S.W.2d 734, 740 (Mo.App.1981).

We may affirm the correctly decided portion of the judgment "if the excess matter is separable, does not affect the finality of the judgment and is otherwise a proper subject for appellate disposition within the issues framed." *Id.; see also Lavalle v. Lavalle,* 11 S.W.3d 640, 651–52 (Mo.App. 1999).

On appeal, points of error relating to separable, excess legal conclusions are moot. *Western Sur.,* 20 S.W.3d at 571; *State ex rel. Lester E. Cox Medical Center v. Wieland,* 985 S.W.2d 924, 926 n. 6 (Mo.App.1999). They do not present an issue for appellate review, *Engeman v. Engeman,* 123 S.W.3d 227, 241 (Mo.App. 2003), because any opinion addressing surplus conclusions would be merely advisory. In re Estate of Looney, 975 S.W.2d 508, 519 (Mo.App.1998). Because we do not render advisory opinions, we refrain from deciding points that raise error with respect to matters stricken as surplusage. *Id.*

## II. *Discussion*

In their brief, defendants assert, in separately lettered subpoints, that plaintiff failed to satisfy the mandatory prerequisites of Rule 52.08(a) because the named plaintiff is not an adequate class representative as required by Rule 52.08(a)(4) (Subpoint G). They also contend that plaintiff failed to meet either prong of Rule 52.08(b)(3), because individual issues predominate over common issues (Subpoint A), and the certified class failed to satisfy the superiority requirement (Subpoint E). With respect to predominance, they further claim that the trial court misapplied and misdeclared the law in declaring that the MPA requires transaction causation (Subpoint B), in concluding that presump-

tions could be used to satisfy the requirements of an MPA claim (Subpoint C), and in declaring the basis for plaintiff's class-wide damages (Subpoint D). They last assert that plaintiff failed to satisfy the implied prerequisite that the class be capable of legal definition (Subpoint F).[4]

A. *Class Certification—General Principles*

Plaintiff sought class certification pursuant to section 407.025.3 of the MPA and Rule 52.08. Section 407.025.2 authorizes claims under the MPA to be brought as class actions "if the unlawful method, act or practice has caused similar injury to numerous other persons." Section 407.025.3 requires that a class action be maintained in a manner consistent with Fed.R.Civ.P. 23 and Rule 52.08, to the extent that the Missouri rule is not inconsistent with the federal rule. Subsections (1) through (7) of section 407.025.3 track Rule 52.08(a) and (b).

"A class action is designed to promote judicial economy by permitting the litigation of the common questions of law and fact of numerous individuals in a single proceeding." *Union Planters,* 142 S.W.3d at 735. Rule 52.08(a)(1)-(4) and section 407.025.3(1)-(4) set out the prerequisites to a class action. They require, at a minimum, "that (1) the class be so numerous that joinder of all members is impracticable, (2) questions of law or fact common to the class exist, (3) the claims of the representative parties are typical of the claims of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." *American Family,* 106 S.W.3d at 486. These prerequisites are mandatory. *Id.* Class

---

4. All of defendants' claims are included in one point with six subpoints. Each of these subpoints is a separate claim of error that should have been raised as a separate point.

*Thummel v. King,* 570 S.W.2d 679, 688 (Mo. banc 1978); *Mello v. Williams,* 73 S.W.3d 681, 685 (Mo.App.2002).

certification is appropriate only if each listed element is met. *Id.*

■ In addition to the prerequisites of Rule 52.08(a), a class must also satisfy one of the three requirements of Rule 52.08(b). *Id.* at 487. Plaintiff alleged facts indicating that she was seeking class certification under Rule 52.08(b)(3). Rule 52.08(b)(3) allows a lawsuit to proceed as a class action if the court finds that common questions of law or fact "predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The party seeking class action certification bears the burden of proof. *Coleman v. Watt,* 40 F.3d 255, 258 (8th Cir.1994).

Because defendants have raised an error with respect to the definition of the class, we also observe that federal courts have identified two implied prerequisites for class certification: that a class capable of legal definition exists and that the class representatives are members of the proposed class. In re Tetracycline Cases, 107 F.R.D. 719, 723 n. 4 (W.D.Mo.1985); 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE, section 23.20 n. 1 (Matthew Bender 3d ed.2005).

B. *Rule 52.08(a)—Adequacy of Plaintiff as Class Representative (Subpoint G)*

■ For their sole challenge to the Rule 52.08(a) prerequisites, defendants maintain that the named plaintiff is not an adequate class representative as required by Rule 52.08(a)(4) because she is permitting the potential splitting of claims. Defendants argue that if plaintiff prevails, she will bar all class members from bringing their own more potentially lucrative personal injury actions. We disagree.

■ Plaintiff alleged that she asserted claims that are typical of the claims of the entire class, that she had no interests antagonistic to those of the class, and that she would fairly and adequately represent and protect the class. Rule 52.08(a) and section 407.025.3(4) require that the class representative fairly and adequately represent the class. A plaintiff must allege and prove facts showing that the plaintiff has been fairly chosen and adequately represents the class. *Kansas City Terminal Railway Co. v. Industrial Com'n,* 396 S.W.2d 678, 680 (Mo.1965). Adequate representation is a fact issue that must be determined under the circumstances of each case. *City of O'Fallon v. Bethman,* 569 S.W.2d 295, 299 (Mo.App.1978).

■ When it evaluates the adequacy of representation, the trial court must determine whether class counsel or the named representatives have conflicts of interest that will adversely affect the interests of the class. *Union Planters,* 142 S.W.3d at 735. " 'This requirement is particularly important because the due process rights of absentee class members may be implicated if they are bound by a final judgment in a suit where they were inadequately represented by the named plaintiff.' " *Id.* at 735–36 (quoting *Key v. Gillette Co.,* 782 F.2d 5, 7 (1st Cir.1986)). *See also Kansas City Terminal,* 396 S.W.2d at 680. "The court also has a duty to the defendants in a class action proceeding to ensure that the litigation will comply with due process and achieve a final binding resolution of the dispute." *Union Planters,* 142 S.W.3d at 740. A true conflict of interest between the representative and the class members with respect to the subject matter of the lawsuit prevents a finding that the representative can fairly and adequately represent the class. *Redmond v. Commerce Trust Co.,* 144 F.2d 140, 151 (8th Cir.1944); *Rentschler v. Carnahan,* 160 F.R.D. 114, 117 (E.D.Mo.1995).

The fact that potential class members may have individual personal injury claims arising from consuming defendants' products does not make plaintiff an inadequate class representative with respect to the MPA claim for economic damages. Rule 52.08(c)(2) gives class members in a common question class action the ability to opt out. Further, since the class was certified solely on the MPA claim, a class member could not recover damages for personal injury in the class action. Defendants have not demonstrated that an exception to the rule against splitting a cause of action would not be available to class members in this situation. *See* 18 MOORE ET AL., *supra,* section 131.40[3][e][iii] (comparing a class action to actions in which a court's subject matter jurisdiction precluded disposition of other claims as described in RESTATEMENT (SECOND) OF JUDGMENTS section 26(1)(c) (1982)); *Reis v. Peabody Coal Co.,* 997 S.W.2d 49, 72–73 (Mo.App.1999). *See also Fortner v. Thomas,* 983 F.2d 1024, 1031 (11th Cir.1993); *Crowder v. Lash,* 687 F.2d 996, 1008–09 (7th Cir.1982); *Dosier v. Miami Valley Broadcasting Corp.,* 656 F.2d 1295, 1298–99 (9th Cir. 1981). Subpoint G is denied.

### C. *Rule 52.08(b)(3)*

#### 1. *Predominance of Individual Issues (Subpoint A)*

##### a. *Predominance Analysis*

In their challenge to the Rule 52.08(b)(3) findings, defendants first contend that the trial court abused its discretion in certifying a class because common issues do not predominate over individual issues as required by Rule 52.08(b)(3). They focus on the individual smoker and point out that 1) whether a smoker received lower tar and nicotine depended on his or her individual smoking behavior; 2) individuals purchased Lights for many reasons, including reasons unrelated to lower

tar and nicotine; and 3) smokers varied in their knowledge about whether Lights delivered lower tar and nicotine. To address this contention, we first examine the reported out-of-state opinions in Lights consumer class action cases, and then we apply Missouri law.

#### 1) *Out–of–State Lights Consumer Class Action Cases*

No reported Missouri case has considered this precise issue in this particular factual context. Although a plethora of similar Lights consumer class action lawsuits have been filed in other states, only two have resulted in officially reported appellate decisions. Out-of-state appellate decisions do not constitute controlling precedent in Missouri courts. *United Fire & Cas. Co. v. Tharp,* 46 S.W.3d 99, 105 (Mo.App.2001). However, they may be persuasive when the facts are similar, and when they are based on " 'sound principles and good reason.' " *Id.* (quoting *Missouri Tp. Chariton County v. Farmers' Bank,* 328 Mo. 868, 42 S.W.2d 353, 356 (1931)). For the reasons that follow, neither of the two reported out-of-state Lights class action certification opinions is persuasive.

In *Aspinall v. Philip Morris Companies, Inc.,* 442 Mass. 381, 813 N.E.2d 476 (2004), on which plaintiff relies, the Massachusetts Supreme Court upheld the certification of a class of smokers in a claim alleging deceptive conduct in the marketing of Lights. *Aspinall* does not provide relevant guidance or a rationale for deciding a case under Missouri Rule 52.08(b)(3) or the MPA. *Aspinall* was decided pursuant to Mass. Gen. Laws c. 93A, section 9(2), which does not contain either the "predominance" or the "superiority" requirements for class certification required by Rule 52.08(b)(3) and section 407.025.3(7). Rather, section 9(2) of the Massachusetts statute allows an injured

party to bring a class action "if the use or employment of the unfair or deceptive act or practice has caused similar injury to numerous other persons similarly situated and if the court finds in a preliminary hearing that he adequately and fairly represents such other persons." In *Aspinall*, the Massachusetts Supreme Court specifically pointed out that the criteria for class action certification under the Massachusetts statute was significantly different from the criteria under MASS. R. CIV. P. 23(a) and (b). 813 N.E.2d at 484. The Massachusetts class action rule that *Aspinall* found significantly different from the Massachusetts statute is comparable to Missouri Rule 52.08(a) and (b).

In a Lights class action lawsuit brought under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), FLA. STAT. section 501.201 *et. seq.* (2000), a Florida court of appeals reversed the trial court's certification of a class of Lights consumers who had purchased Lights over a thirty-year period and who sought a refund of the purchase price. *Philip Morris USA Inc. v. Hines*, 883 So.2d 292 (Fla.Dist.Ct. App.2003). It held that an individual's personal smoking behavior and reasons for purchase governed whether Lights had reduced value for that smoker, and that those individual issues prevented the common facts concerning the defendant's conduct from predominating. *Id.* at 294–95. Although Florida's class action rule, FLA. R. CIV. P. 1.220(b)(3), is comparable to Missouri's class action rule, FDUTPA differs from the MPA in numerous respects. However, irrespective of those statutory differences, the *Hines* opinion does not provide a rationale that assists us with the specific issues raised in this appeal.

### 2) *Application of Missouri Law*

■ Section 407.025.3(7) and Rule 52.08(b)(3) allow an action to be maintained as a class action if "[t]he court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Thus, in addition to finding the existence of common questions under Rule 52.08(a)(2), the court must find that the common questions predominate. This is a more demanding inquiry than the commonality inquiry under 52.08(a)(2). *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir.1997).

■ In *American Family*, the court explained the "predominance" requirement:

"The 'predominance' requirement ... does not demand that every single issue in the case be common to all the class members, but only that there are substantial common issues which 'predominate' over the individual issues." *South Carolina Nat'l Bank v. Stone*, 139 F.R.D. 325, 331 (D.S.C.1991) (citing 3B Moore & Kennedy, *Moore's Federal Practice* ¶ 23.06–1 at 23–159, 160). The predominant issue need not be "dispositive of the controversy or even be determinative of the liability issues involved." Alba Conte & Herbert Newberg, *Newberg on Class Actions* section 4:25, at 169 (4th ed.2002). The need for inquiry as to individual damages does not preclude a finding of predominance. *Lewis v. Nat'l Football League*, 146 F.R.D. 5, 12 (D.D.C.1992)(mem.); *see also Freedman v. Louisiana–Pac. Corp.*, 922 F.Supp. 377, 401 (D.Or.1996); *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 60 (N.D.Ill.1996) (memo.). "A single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining in-

dividual questions." Conte & Newberg § 4:25, at 172.

106 S.W.3d at 488. In sum, the common issues do not need to dispose of the entire action. Rather, "when one or more of the central issues in the action are common to the class and can be said to predominate," the case may properly proceed as a class action, even though other important matters will have to be tried separately. 7A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D section 1778, at 529 (1986).

The requirement of Rule 23(b)(3) that common questions predominate over individual questions "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). The nature of the evidence that will suffice to resolve a question determines whether the question is common or individual. *See In re Visa*, 280 F.3d at 136–40. If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question. *See id.* *Blades*, 400 F.3d at 566.

In the petition, plaintiff alleged that the common questions of law and fact relevant to Count I were whether defendants misrepresented the true tar and nicotine yields of Lights, whether they intentionally designed Lights to generate lower tar and nicotine measurements on the Cambridge Filter System while delivering significantly higher quantities, whether defendants' conduct violated the MPA, and whether and to what extent the class has been damaged.

Defendants' position on appeal is that although common facts relating to their conduct exist, individual issues remain that make this case unsuitable for class action certification; that is, the individual consumer's smoking behavior, reasons for purchase, and knowledge. We address each of these claims separately.

### a) Smoking Behavior

Defendants first argue that whether or not a consumer actually ingested a higher amount of tar or nicotine depends on how the consumer smoked each cigarette and that this presents an individual issue of proof with respect to each consumer. To determine what evidence may be required, we look at the allegations of the petition. However, we do not consider whether the petition states a cause of action. Further, we do not consider what proof may be required under a cause of action defendant thinks plaintiff should have pleaded. Plaintiff's claim with respect to liability is that she purchased a product designed and manufactured to manipulate test results, resulting in a misrepresented and mislabeled product. Plaintiff's allegations go to the condition and labeling of the product at the time it was sold; they do not make defendant's liability dependent on each consumer's individual smoking behavior.

Plaintiff also alleges that she failed to receive the qualities and economic value of a low tar, low nicotine cigarette. Again, this allegation goes to the condition of the product at the time of the purchase transaction and would require proof that the product did not have the value of a truly low tar and low nicotine cigarette. This allegation does not consider the consumer's manner of use of the product after purchase. As a result, evidence of individual smoking behavior does not predominate over the common questions of liability.

### b) *Reasons for Purchase*

Defendants next argue that if a consumer purchased Lights for reasons unrelated to tar and nicotine, the consumer got what he or she paid for and was not deceived or damaged. They contend that the need to determine which individuals were deceived by the term "light" must be determined on a case-by-case basis. However, plaintiff did not allege reliance or deception in her petition, and she did not base the theory of this lawsuit on reliance or deception. Therefore, under the theory of this lawsuit, the individual reasons for purchase are not issues and do not predominate over the common questions.

### c) *Knowledge*

Defendants last argue that knowledge is a defense under the MPA that would defeat a claim or cut it off at a certain time and that each consumer's knowledge presents an individual predominant question. We disagree that knowledge is a predominant issue.

 In the first place, whether or not knowledge is a defense to an MPA claim and to what extent it is a defense are legal questions. If knowledge is not a defense, it will not be an issue in the lawsuit, much less a predominant issue. On the other hand, if knowledge is a defense, it would not necessarily create a predominant individual issue. As a general matter, the fact that an affirmative defense may be available against certain individual class members and affect them differently does not, by itself, show that individual issues predominate. In re Visa Check/MasterMoney Antitrust Litigation, 280 F.3d 124, 138 (2nd Cir.2001); 5 MOORE ET AL., *supra*, section 23.45[3]. In *American Family*, the court held that "the trial court can resolve individual questions, particularly those relating to damages and defenses, after making a determination on the predominant issue." 106 S.W.3d at 489 n. 7. If knowledge is a defense under the MPA and serves to cut off a claim, its application would be similar to the application of a statute of limitations defense. Differences in the application of the statute of limitations to individual class members do not preclude certification. *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 924 (3rd Cir.1992); 5 MOORE ET AL., *supra*, section 23.45[3]. The trial court did not abuse its discretion when it found that each class member's knowledge did not create individual issues that predominated over common questions.

### d) *Common Questions*

Under plaintiff's theory, defendants engaged in an unfair marketing practice when they marketed Lights as having less tar and nicotine when they knew that this would not be true for most smokers. Plaintiffs alleged that identical misrepresentations about tar and nicotine yields were made to all class members with respect to a uniform product. If it is determined that defendants' conduct violated the MPA and caused some or all of the prospective class members to lose an ascertainable amount of money, the trial court can thereafter consider any individual circumstances or issues that may exist. The predominance of the common issues is not defeated simply because individual questions may remain after the common issues are resolved, such as questions of damages or individual defenses. *American Family*, 106 S.W.3d at 488.

As in *American Family*, the trial court determined, after rigorous analysis, that the resources of both the plaintiffs and the judiciary can be conserved through class certification without diluting defendants' procedural safeguards. The trial court did not abuse its discretion in finding that

common issues predominate. Subpoint A is denied.

### b. *Issues Going to the Merits*

In the class action certification proceeding, the parties hotly contested numerous issues both on the propriety of the class action and the merits of the underlying case. The record in this appeal consists of 79 volumes. The order from which this appeal is taken is 50 pages. In its order, the trial court meticulously analyzed each of the issues raised by the parties. In three of their subpoints, defendants challenge certain legal conclusions made by the trial court in determining whether common questions predominate. We address each separately.

### 1) *Transaction Causation (Subpoint B)*

In its analysis of whether common issues predominate, the trial court concluded that transaction causation is not required because a private plaintiff does not have to establish reliance under the MPA. In their Subpoint B, defendants assert that this is an erroneous declaration of the law.

■ Reliance may be a part of a class certification analysis because if individual reliance is alleged and required to be proved, there is authority that common questions would not predominate. *See* 5 MOORE ET AL., *supra*, section 23.45[5][b]. However, in her carefully worded petition,

plaintiff did not specifically allege that she purchased Lights as a result of any misrepresentation. Rather, she alleged acts that she claimed violated the MPA and that as a result of those acts, she suffered an ascertainable loss. Whether and to what extent reliance is required for a private plaintiff seeking damages under the MPA are questions that have not been decided in Missouri.[5] The answer to these questions bears on whether plaintiff stated a cause of action. Whether this petition as so drafted states a claim under the MPA is a contested issue on which the law is not settled. In these circumstances, resolution of this issue is not properly part of this class action certification analysis. This is an issue that should be resolved in the context of a motion to dismiss,[6] a motion for summary judgment,[7] or at trial.

The trial court's legal conclusions relating to transaction causation go to the merits and, as such, are surplusage in its order certifying a class. In accord with our discussion under Section I.B. of this opinion, these conclusions are stricken from the class certification order, and the issue raised in this subpoint B is moot in this appeal.

### 2) *Presumptions (Subpoint C)*

Defendants next claim that the trial court misdeclared the law in concluding that transaction causation and actual de-

---

**5.** *State ex rel. Webster v. Areaco Inv. Co.*, 756 S.W.2d 633 (Mo.App.1988), does not resolve this issue because it involves an injunction action brought by the attorney general, not a private claim for money damages. Courts in other jurisdictions do not agree on whether reliance is required to state a claim for damages under the varying consumer protection statutes of other states. *See* cases collected in Bob Cohen, Annotation, Right to Private Action Under State Consumer Protection Act— Preconditions to Actions, 117 ALR5th 155, 222, section 10 (2004); *see also* 5 MOORE ET AL., *supra*, section 23.45[5][b].

**6.** *See, e.g., Oliveira v. Amoco Oil Co.*, 201 Ill.2d 134, 267 Ill.Dec. 14, 776 N.E.2d 151 (2002), in which similar questions were decided on a motion to dismiss for failure to state a claim.

**7.** Defendants did file a motion for summary judgment, which was denied. That order is not appealable. *Leiser v. City of Wildwood*, 59 S.W.3d 597, 605 (Mo.App.2001); *Judy v. Arkansas Log Homes, Inc.*, 923 S.W.2d 409, 415 (Mo.App.1996).

ception could be presumed for all members of the class. The trial court concluded that even if plaintiff must show individual reliance, the law will infer or presume its existence and allow total damages to be proportionately discounted upon proof that a portion of sales were made to consumers who were not actually deceived. The court then concluded that if each class member was not required to put on individualized proof to establish class-wide reliance, defendants would be entitled to put on non-individualized proof of non-reliance.

■ Since plaintiff did not allege reliance and deception, it was not necessary for the court to draw legal conclusions relating to proof of reliance and deception. The trial court's legal conclusions relating to presumptions of reliance and deception are surplusage in its order certifying the class. In accord with our discussion under Section I.B. of this opinion, these conclusions are stricken from the class certification order, and the issue presented by this subpoint C is moot in this appeal.

### 3) *Ability to Prove Class–Wide Damages (Subpoint D)*

■ In concluding that common issues predominate, the trial court rejected the argument that the fact of damages presented a predominant individual issue and concluded that the class members could prove recoverable damages on a uniform, class-wide basis under the benefit of the bargain rule. The trial court also concluded that it was possible that plaintiff could establish through expert testimony that each pack of Lights purchased would have had greater economic value had it been "as represented;" that is, a truly low tar and low nicotine cigarette. Defendants assert that these conclusions are erroneous because they were based on conjecture rather than upon evidence.

■ The trial court devoted nine pages of its judgment to the benefit of the bargain rule. In part of its discussion, it described the rule as a "potentially viable theory of class-wide economic damages." However, it also appeared to conclude that the benefit of the bargain rule would be the measure of damages in this case. It is inappropriate to resolve competing damage theories at the class certification stage. *See Visa*, 280 F.3d at 135; *Comes v. Microsoft Corp.*, 696 N.W.2d 318, 325 (Iowa 2005). To the extent the trial court concluded that a particular measure of damages would apply at trial, its conclusions are surplusage in the class action certification order. In accord with our discussion under Section I.B. of this opinion, these conclusions are stricken from the class certification order, and this issue is moot in this appeal. However, the trial court's identification of the benefit of the bargain theory as a potentially viable theory was within its discretion in determining whether the fact of damage, as opposed to the amounts of damage, was a common issue.

■ Moreover, the trial court's conclusion that it was possible that plaintiff could establish class-wide damages under such a theory through expert testimony does not constitute an abuse of discretion. A trial court may properly consider whether expert testimony exists to support damages in determining whether a class action should be certified, as long as the expert testimony is not so flawed as to be inadmissible as a matter of law. *See Visa*, 280 F.3d at 135; *Comes*, 696 N.W.2d at 325. Usually this is done by reviewing the expert testimony adduced at the certification hearing. In this case, however, plaintiff did not put on expert testimony to support damages at the certification hearing, apparently because both parties had a different theory of damages at that time. The trial court determined that, even in the

absence of such testimony, it could use logic and common sense to conclude that expert testimony could be adduced to support class-wide damages under a possible theory of damages. The court set out a well-reasoned basis for so concluding. In this situation, the court's reliance on its own experience and common sense instead of on expert testimony was within its discretion. *See Jake C. Byers, Inc. v. J.B.C. Investments,* 834 S.W.2d 806, 818–19 (Mo. App.1992). This part of Subpoint D is denied.

### 2. *Superiority Requirement (Subpoint E)*

 Defendants next contend that the certified class fails to satisfy the superiority requirement in that it is not manageable and that the FTC is a superior forum for plaintiff's claims. We disagree.

Plaintiff alleged that a class action was superior to other methods for the fair and efficient adjudication of this controversy because of the existence of the common questions of law and fact and the complexity, burden, delay, and expense of joining thousands of individual claims. She alleged that the prosecution of separate actions would expose defendants to inconsistent results and incompatible standards of conduct. She also alleged that pursuing these claims in the form of a class action would present fewer management difficulties and provide the benefit of unitary adjudication, economies of scale, and comprehensive supervision by a single court.

Rule 52.08 (b)(3) and section 407.025.3(7) require courts to find that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Rule 52.08(b)(3)(A)-(D) and section 407.025.3(7)(a)-(d) contain four factors relevant to the superiority determination. Of these, defendants claim that the difficulties encountered in the management of the class action and the desirability of concentrating the litigation in a different forum, the FTC, mandate a finding that the class was not superior.

#### a. *Manageability*

 Defendants first argue that a class action would not be manageable. "Manageability" is a consideration that "encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit." *Eisen,* 417 U.S. at 164, 94 S.Ct. at 2146.

Defendants assert that the class is not manageable because plaintiff did not show that a trial plan could be devised to try the case efficiently to a final judgment, without thousands of follow-up mini-trials. The trial court acknowledged in its December 31, 2003 order that difficulties would be posed by the need to determine damages for numerous plaintiffs but that a process could be devised. It did not revisit this issue in the order from which this appeal was taken. Under these circumstances, we assume that the trial court resolved this issue in the same manner as it did in its previous order. This approach is consistent with the rule that directs us to consider all fact issues upon which no specific findings are made in accordance with the result reached. Rule 73.01; *Ford Motor Credit Co. v. Freihaut,* 871 S.W.2d 129, 130 (Mo.App.1994).

 Failure to certify an action on the sole ground that it would be unmanageable is disfavored by federal courts under Fed.R.Civ.P. 23(b)(3). *Visa,* 280 F.3d at 140; *Klay v. Humana, Inc.,* 382 F.3d 1241, 1272 (11th Cir.2004). " '[T]he issue of manageability of a proposed class action is always a matter of justifiable and serious concern for the trial court and peculiarly within its discretion.' " *Visa,* 280 F.3d at 141 (quoting *Windham v. Ameri-*

can Brands, Inc., 565 F.2d 59, 65 (4th Cir.1977)). This is because the determination is a practical matter dealing with fact issues with which a trial court has greater familiarity and expertise than has an appellate court. *Windham,* 565 F.2d at 65. In *American Family,* the court recognized that the need for inquiry on individual damages does not preclude a finding of predominance. 106 S.W.3d at 488. "It is very common for Rule 23(b)(3) class actions to involve differing damage awards for different class members." *De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 233 (7th Cir.1983). The existence of administrative complications in managing the distribution of different damage awards to a class does not suggest that a trial court abuses its discretion in finding a class manageable. *Id.*

The fact that there may be follow-up "mini trials" or similar procedures to address damages does not by itself make a class unmanageable. The trial court did not abuse its discretion in finding the proposed class action to be manageable.

### b. *FTC*

 Defendants next argue that a class is not superior because the Federal Trade Commission is a superior forum for resolving these issues based on the agency's three-decade history and familiarity with the questions raised. "[W]hether an administrative adjudication would provide a more advantageous procedure than a class action may depend on the type of remedy that could be awarded by the agency and the general attitude of the agency toward the issues and problems raised by the claimants." WRIGHT, *supra,* section 1779, at 561. Defendants have not provided any legal authority to support their claim that the FTC is a superior forum nor have they provided any rationale beyond conclusions explaining why, in

the absence of such authority, they should prevail. Accordingly, we deem this argument abandoned. *Beatty v. State Tax Com'n,* 912 S.W.2d 492, 498–99 (Mo. banc 1995).

In *American Family,* our supreme court held:

> The object of Rule 52.08(b)(3) "is to get at the cases where a class action promises important advantages of economy of effort and uniformity of result without undue dilution of procedural safeguards for members of the class or for the opposing party." Conte & Newberg § 4:24, at 155 (quoting Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (1),* 81 Harv. L.Rev. 356, 389–90 (1967)) (discussing the Federal counterpart to Rule 52.08).

106 S.W.3d at 489. The trial court did not abuse its discretion in finding a class action superior. Subpoint E is denied.

D. *Implied Prerequisites: Ascertainability of Class (Subpoint F)*

Defendants last claim that the class definition does not satisfy the implied prerequisite that it be capable of legal definition because it requires individuals to decide whether they have claims for personal injuries relating to smoking. Defendants argue that the class definition is ambiguous because it is not certain who may qualify as a person who does not have a claim for personal injury attributable to smoking.

 "The primary concern underlying the requirement of a class capable of definition is that the proposed class not be amorphous, vague, or indeterminate." *Tetracycline Cases,* 107 F.R.D. at 728. A class is sufficiently definite if it is "administratively feasible to determine whether a given individual is a member of the class." *Id.* However, the class "need not be so

ascertainable from the definition that every potential member can be identified at the commencement of the action." *Id.*

All Missouri residents who purchased Lights during the relevant time period but who do "not have a claim for personal injury related to smoking" is an ascertainable defined class. These are objective criteria that do not depend on the consumer's subjective state of mind or the merits of the case. *See* 5 MOORE ET AL., *supra*, section 23.21[1]-[4]. Specifically, whether an individual has a personal injury claim can be determined by the application of established legal principles to objective facts. The trial court did not abuse its discretion in so defining the class. Subpoint F is denied.

*Conclusion*

Those portions of the trial court's order drawing legal conclusions that go to the merits as identified in this opinion are stricken. As so modified, the judgment of the trial court certifying a class is affirmed.

PATRICIA L. COHEN, P.J. and ROBERT G. DOWD, JR., J., concur.