James DOYLE, Sheri Doyle, Lawrence Casey, Joseph McCoy, Christenna McCoy, and Matt McKinstry, Individually and as class representatives, and Ronald Naucke and Pat Naucke, Individually, Plaintiffs/Respondents,

v.

FLUOR CORPORATION, Leslie McCraw, Bruce C. Clark, The Doe Run Resources Corporation, Homestake Lead Company of Missouri, A.T. Massey Coal Company, Doe Run Investment Holding Company, DR Acquisition Corp., Marvin K. Kaiser, The Renco Group, Inc., and Ira Rennert, Defendants/Appellants.

No. ED 87137.

Missouri Court of Appeals,
Eastern District,
Division One.

June 27, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 9, 2006.

Application for Transfer Denied
Sept. 26, 2006.

Andrew Rothschild, John H. Quinn III, Theodore J. Williams, Jr., Ted L. Perry-

man, Jeffrey L. Cramer, St. Louis, MO, for Appellants.

Robert F. Ritter, St. Louis, MO, for Respondents.

MARY K. HOFF, Presiding Judge.

Fluor Corporation, The Doe Run Resources Corporation, DR Acquisition Corporation, Ira L. Rennert, The Renco Group, Inc., Marvin K. Kaiser, A.T. Massey Coal Company, Doe Run Investment Holding Company, Leslie McCraw, and Homestake Lead Company of Missouri (collectively referred to as Defendants) appeal from the trial court's order granting, in part, a Motion for Class Certification filed by James Doyle, Sheri Doyle, Lawrence Casey, Joseph McCoy, Christenna McCoy, and Matt McKinstry, individually and as class representatives, and Ronald Naucke and Pat Naucke, individually (all plaintiffs collectively referred to as Class Representatives), in an action seeking to recover for damage to their real property due to the release of lead, heavy metals, and other substances from the Doe Run Lead Smelter located in Herculaneum, Missouri.

## Facts

Class Representatives brought the present action seeking to recover for damage to their real properties located in Herculaneum, Missouri. In their petition, Class Representatives allege that the Doe Run Smelter, property, and related operations and facilities owned, operated, managed, supervised, and used by Defendants in Herculaneum released metals and other substances causing damages and losses to real property owned by Class Representatives and the proposed class.

Class Representatives seek recovery under theories of negligence and negligence per se, absolute or strict liability, private nuisance, and trespass. The petition avers

Class Representatives' damages include loss in property value with and without remediation, the need for the cost of remediation of residential real property, loss of real property, loss of use and enjoyment of real property, and annoyance and discomfort arising out of the impact to residential real property.

In its order granting certification of the case as a class action, the trial court defined the proposed class as:

All persons who own and occupy residential real property in the Class Geographic Area.

The class consists of two subclasses:

All persons who own and occupy residential real property that has not undergone soil replacement performed by Defendants after 1990.

All persons who own and occupy residential real property which has undergone soil replacement by Defendants after 1990.

The Class Geographic Area is defined as the area within the city limits of Herculaneum, Missouri except that area west of Commercial Boulevard.

## Standard of Review

The determination of class certification under Rule 52.08 lies within the trial court's sound discretion. *State ex rel. Union Planters Bank, N.A. v. Kendrick*, 142 S.W.3d 729, 735 (Mo. banc 2004). We review an order granting class certification solely for abuse of discretion. *Koger v. Hartford Life Ins. Co.*, 28 S.W.3d 405, 410 (Mo.App. W.D.2000). We will find that the trial court abuses its discretion only where its ruling is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration. *Id.* If reasonable persons could differ as to the propriety of the ruling, we will not find abuse of discretion. *Id.* Because class cer-

tification can be modified as the case progresses, courts should err in favor of, and not against, certifying a class. *Daigle v. Shell Oil Co.,* 133 F.R.D. 600, 602 (D.Colo. 1990).

Rule 52.08 governs procedure involved in class action certification. As a prerequisite to a class action: 1) the class must be so numerous that joinder of all members is impracticable; 2) there must be questions of law or fact common to the class; 3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; and 4) the representative parties must be able to fairly and adequately protect the class' interest. Rule 52.08(a).

Once the prerequisites of Rule 52.08(a) are met, the class action is maintainable only if the class also satisfies one of the three requirements of Rule 52.08(b). In their motion for class action certification, the Class Representatives alleged facts indicating that they were seeking class certification under Rule 52.08(b)(3). Rule 52.08(b)(3) requires the trial court to find that the questions of law or fact common to the class members "predominate over any questions affecting only individual members" and that a class action is superior to other available methods for the fair and efficient adjudication of the matter. Because Rule 52.08 is identical to Fed. R.Civ.P. 23, we may consider federal interpretations of Rule 23 in applying Rule 52.08. *Union Planters,* 142 S.W.3d at 735 n. 5.

### Analysis

On appeal, Defendants challenge only the following findings made by the trial court: 1) the Class Geographic Area is an appropriate way to define the class; 2) the Class Representatives met their burden regarding the numerosity prerequisite of Rule 52.08(a); and 3) common issues predominate over individual ones, and a class action is a superior method for adjudicating the controversy in accordance with Rule 52.08(b)(3).

Before we begin our analysis of Defendants' first point, we note that in a companion case, *Meyer ex rel. Coplin v. Fluor Corp.,* 2006 WL 996540, —— S.W.3d —— (Mo.App. E.D.2006), we affirmed the trial court's denial of class certification for a purported class of children for a claim of medical monitoring based on exposure to lead and other chemicals released by the smelter. On appeal, Meyer contended the denial was error because the trial court's finding required present physical injury as an element of medical monitoring. *Id.* at *2, ——. Contrary to the basis advanced in Meyer's point, we found that the trial court's analysis actually reflected a determination that the individual issues relevant to the children's exposure to toxic products and to the potential risk of harm predominated over class issues. *Id.* at *4, ——. In making this conclusion, the trial court drew on the principle that, as individualized evidence about class members is necessary to prove that class members in a medical monitoring claim have suffered a legal harm, it was highly likely that the common questions would be subordinate to individual issues. *Id.* We found no abuse of discretion in the trial court's determination that the class action format was not an appropriate method to resolve Meyer's claim for medical monitoring. *Id.* at *1, 6, ——, ——.

In their first point, Defendants claim the trial court erred in certifying a property damage class consisting of persons who own and occupy residential property within the class geographic area because such a class may be certified only if common questions predominate over questions affecting individual class members and be-

cause a class action is a superior method of adjudication.

We first address Defendants' challenge to the trial court's finding that common questions predominate over any individualized issues.

■■■ The predominance requirement of Rule 52.08(b)(3) does not demand that every issue in a matter be common to all the class members, only that substantial common issues exist which predominate over the individual issues. *State ex rel. American Family Mut. Ins. Co. v. Clark*, 106 S.W.3d 483, 488 (Mo. banc 2003). A single common issue may be the overriding one in a matter, despite the existence of numerous remaining individual questions. *Id.* Moreover, the predominant issue need not dispose of the controversy or even determine liability. *Id.*

■■■ As previously noted, the Class Representatives' petition sought recovery under theories of negligence and negligence per se, absolute or strict liability, private nuisance, and trespass. The essential elements of a negligence claim are: 1) the existence of a duty by the defendant to protect the plaintiff from injury; 2) failure of the defendant to perform that duty; and 3) injury to the plaintiff resulting from the defendant's failure. *Mary-*

*land Heights Leasing, Inc. v. Mallinckrodt, Inc.*, 706 S.W.2d 218, 223 (Mo.App. E.D.1985). Nuisance is the unreasonable, unusual, or unnatural use of another's property substantially impairing that individual's right to peacefully enjoy his property. *Id.* at 221. Trespass is the direct physical interference with another's property. *Id.* at 224. The trial court in its order correctly identified several common issues, including "whether the smelter was responsible for emitting lead and other toxic metals into the air, whether the defendants were thereby negligent, and whether the defendants' conduct resulted in contamination to the real property located in Herculaneum." For each member to make a prima facie showing of the questions presented in the petition's claims, much of the same evidence will suffice. In their point, however, Defendants argue that individual questions, including the nature and extent of lead contamination, the causes and sources of lead contamination, the extent of interference with use and enjoyment of the class members' properties, the existence and extent of damages, and the existence of defenses to plaintiffs' claims, can only be resolved on a property-by-property basis so that a class action is not a superior means of adjudication in this instance.[1] Although individual ques-

---

1. In their reply brief, Defendants claim that "the most relevant cases from other jurisdictions show that toxic tort cases arising from lead smelting operations do not lend themselves to class treatment." Defendants cite *St. Joe Co. v. Leslie*, 912 So.2d 21, 25–26 (Fla.Dist.Ct.App.2005), for the proposition that class certification is inappropriate for property owners' claims arising out of lead contamination. Defendants state that the appellate court in *St. Joe* reversed the trial court's certification because the record showed many sources existed for the lead and arsenic contamination claimed by the plaintiffs. Defendants incorrectly state the court's holding. After determining none of the class representatives testified that dumping oc-

curred on their property or even that their property was contaminated, the *St. Joe* court held the trial court abused its discretion in finding common issues predominated because individualized factual determinations would be necessary to determine whether a class member's property was contaminated and, if so, what caused the contamination. *Id.* at 25. Two other cases cited by Defendants, *Reilly v. Gould, Inc.*, 965 F.Supp. 588 (M.D.Pa.1997) and *RSR Corp. v. Hayes*, 673 S.W.2d 928 (Tex.App.1984), are distinguishable from the instant case in that the petitions in those cases involved a variety of claims for personal injuries as well as property damage. *See Reilly*, 965 F.Supp. at 598, 600 (action involving three subclasses, a medical monitoring class,

tions of damages or individual defenses may remain after the common issues here are resolved, the need for individualized proof as to such questions does not defeat the predominance of the common issues. *Craft v. Philip Morris Co., Inc.,* 190 S.W.3d 368 (Mo.App. E.D.2005).

■■■ Even if other important matters will need to be tried separately, a case may proceed as a class action if one or more of the central issues are common to the class and can be said to predominate. *Id.* at 381–82. Given that many of the central issues here are common to the class, common issues can be said to predominate. *Id.* We find no abuse of discretion in the trial court's determination that substantial common issues exist which predominate over the individual issues.

We next consider Defendants' contention that the certified class fails to satisfy the superiority requirement of Rule 52.08(b)(3). Rule 52.08(b)(3) lists four factors relevant to the superiority determination:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(D) the difficulties likely to be encountered in the management of a class action.

In their brief, Defendants argue that a class action is not a superior method for adjudicating this matter because: 1) Defendants will be deprived of the opportunity to show that certain individual property owners have suffered no injury or insufficient contamination and that Defendants did not cause other individual property owners' injury; and 2) even if the common issues are tried on a class-wide basis, the trial court still will need to hold expensive, complex "mini-trials" regarding individual damages and defenses. Essentially, defendants are arguing that a class action would not be manageable.

■■■ Manageability encompasses the gamut of practical problems that could render the class action format inappropriate for a particular matter. *Craft,* 190 S.W.3d at 386–87. The determination of the manageability of a proposed class action is a practical matter dealing with fact issues with which a trial court has greater familiarity and expertise than has an appellate court; thus, it is an issue peculiarly within the trial court's discretion. *Id.*

The relevant factors of this case support the trial court's certification. Unlike personal injury cases, where courts generally find the interest of class members in controlling their own litigation weighs against class certification, the present case contains only property damage claims. *McQuilken v. A & R Dev. Corp.,* 576 F.Supp. 1023, 1032 (D.Penn.1983). The defined class here is a compact and discrete geographical group, readily identifiable. *Id.* Contrary to Defendants' asser-

a personal injury class, and a residential property damage class; court stating "[I]t is evident that the factual disparity among the plaintiffs' claims defeats typicality. This case presents a hodge-podge of factually and legally different issues dispersed among different plaintiffs."); *RSR Corp.,* 673 S.W.2d at 932 (petition prayed for general and special dam-

ages which included personal discomfort and illness; court stating that "appellants have alleged a variety of damages and theories of liability" and "the questions concerning a class plaintiff's personal injuries and RSR's liability thereon are not questions common to the class . . .").

tion, the fact that there may be a need for "mini-trials" to determine damages does not render a class unmanageable. *Craft*, 190 S.W.3d at 387.

The trial court's findings that common questions predominate over questions affecting individuals and that a class action format is a superior method of adjudication for this matter were not an abuse of discretion. Point denied.

In their second point, Defendants claim the trial court erred in certifying a property damage class consisting of persons who own and occupy residential property within the class geographic area because in cases such as this a class may be certified only where plaintiffs have defined an identifiable class having a logical relationship to Defendant's operations. Defendants assert that Class Representatives have failed to identify such a class and instead have relied improperly on arbitrary municipal boundaries for their class definition.

 Rule 52.08(c)(3) requires a judgment in an action maintained as a class action under Rule 52.08(b)(3) to include and specify those whom the court finds to be members of the class. "The primary concern underlying the requirement of a class capable of definition is that the proposed class not be amorphous, vague, or indeterminate." *Craft*, 190 S.W.3d at 387, *quoting In re Tetracycline Cases*, 107 F.R.D. 719, 728 (W.D.Mo.1985). A class is sufficiently definite if it makes class member identification administratively feasible. *Craft*, 190 S.W.3d at 387.

Defendants cite to *Daigle v. Shell Oil Co.*, 133 F.R.D. 600 (D.Colo.1990) in support of their argument that Class Representatives' class definition is insufficient. In *Daigle*, the plaintiffs filed their action to recover personal injury and property damages allegedly caused by the defendants' cleanup activities at a toxic waste disposal pond. *Id.* at 601. The proposed class was defined as consisting of all persons who resided or owned real or personal property within certain delineated boundaries in Adams County, Colorado, during a one year time period. *Id.* at 602–03. The court held that the plaintiffs failed to identify any logical reason relating to the defendants' activities for drawing the boundaries where they did and concluded the plaintiffs failed to identify a class. *Id.*

 Unlike *Daigle*, the class definition here bears a reasonable relationship to the evidence of record to date. The class geographic area is defined as the area within the city limits of Herculaneum, except that area west of Commercial Boulevard. The Doe Run lead smelter is located within the defined class area. A March 2003 Health Consultation prepared by the Missouri Department of Health and Senior Services in cooperation with the Agency for Toxic Substances and Disease Registry noted that environmental sampling indicated lead contamination throughout the city of Herculaneum and classified it as a public health hazard. This consultation also noted that community blood sampling of children demonstrated that proximity to the smelter, specifically, that part of Herculaneum east of Commercial Boulevard, appeared to be associated with higher blood lead levels. Class Representative's experts opined that all of the properties in the class definition had been contaminated by Doe Run's operations and that the properties within the defined area exhibited commonalities such that the contamination would impact the entire defined class area. We conclude the class definition outlines a discrete geographical group, readily identifiable and reasonably related to the evidence of record. We find no abuse of discretion. Point denied.

 In their final point, Defendants claim the trial court erred in certifying a

property damage class consisting of persons who own and occupy residential property within the class geographic area because the numerosity requirement is satisfied only if Plaintiffs demonstrate that a large number of persons exist who both want and need relief. Defendants argue Plaintiffs made no such showing here and instead relied on census data to show the number of persons owning and occupying real property in the class area. Defendants assert this reliance is insufficient to establish numerosity.

A similar assertion was made by the defendants challenging class certification in *Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378 (D.Colo.1993). The *Cook* court rejected this argument, stating that the fact that a class "may initially include persons who do not have claims or who do not wish to assert claims against Defendants is not important at this stage of the litigation, unless it can be shown that most, if not all of the potential class members have no claims to be asserted by the class representatives." *Id.* at 384. Defendants here have made no such showing; indeed, the record evidence, as discussed in the previous point, indicates otherwise.

As a prerequisite to class action certification, Rule 52.08(a)(1) requires that a proposed class be so numerous that joinder of all members is impracticable. The record here demonstrates that the potential cases in this case exceed four hundred. Although putative class size alone is not necessarily determinative, it is an important consideration in satisfying the numerosity requirement. *See e.g., Daigle*, 133 F.R.D. at 603; *McQuilken v. A & R Dev. Corp.*, 576 F.Supp. 1023, 1029 (D.Penn. 1983) (joinder of approximately 375 plaintiffs residing in over 150 dwellings would be impracticable and unnecessary; noting that joinder of even a lesser number had been held to be impracticable). Under the

facts before us, we cannot say the trial court's findings that joinder of all members would be impracticable and the numerosity requirement was satisfied were an abuse of discretion. Point denied.

The trial court's order is affirmed.

CLIFFORD H. AHRENS and PATRICIA L. COHEN, Judges, concur.