Peggy GREEN, et al., Respondents,

v.

FRED WEBER, INC., Appellant.

No. SC 88780.

Supreme Court of Missouri,
En Banc.

June 10, 2008.

Lawrence F. Hartstein, Clayton, for Appellant.

David Knieriem, J. Christian Goeke, Clayton, for Respondents.

LAURA DENVIR STITH, Chief Justice.

Fred Weber, Inc. ("Weber") owns and operates a quarry in O'Fallon where blasting is among the operations. Peggy Green and other named plaintiffs reside near Weber's quarry. They filed a petition alleging that the manner in which Weber conducts blasting operations is unreasonable and constitutes a private nuisance. They have sued on behalf of themselves and a proposed "class of persons, with [sic] an unknown amount, that have residences within two (2) miles of Defendant's quarry," seeking solely money damages for al-

leged injuries to their properties caused by the blasting. The plaintiffs sought class certification under Rule 52.08(b)(1), but the trial court certified the proposed class under Rule 52.08(b)(3).

This Court rejects Weber's contention that common issues cannot predominate in a claim for a private nuisance. While individual issues of injury and damage may not be susceptible to common determination, the trial court did not err in finding common questions are presented as to whether the blasting constituted a nuisance and, if so, whether the blasting substantially impairs the use and enjoyment of the plaintiffs' property in a manner sufficient to entitle them to nominal damages.

Nonetheless, this Court agrees with Weber that the trial court abused its discretion in certifying the proposed class under Rule 52.08(b)(3). Certification under Rule 52.08(b)(3) is proper only where common issues predominate for the class as defined. Here, the two common issues the trial court found to exist are the reasonableness of Weber's blasting and whether that blasting substantially impaired the class members' use and enjoyment of their property. The very minimal record made below fails to establish a reasonable basis to include within the class all those homeowners living within a 2–mile radius of the quarry.[1] Indeed, all of the named plaintiffs live in the same direction from the quarry—approximately one-quarter to one-third mile away and across Interstate 70. The record did not support the certification of the class as ordered by the court below.

For these reasons, this Court reverses and remands the class certification.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Requirements for Class Action Certification

Certification of a class action is governed by Rule 52.08. Rule 52.08(a) provides that a class will be certified only if a plaintiff shows that, as defined by the plaintiff or as modified by the court: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Rule 52.08(a).

If these four prerequisites are met, the court will certify a class if plaintiff also shows that the class falls within one of the categories set out in Rule 52.08(b). Rule 52.08(b) states, in relevant part[2]:

An action may be maintained as a class action if . . . :

(1) the prosecution of separate actions by or against individual members of the class would create a risk of (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications with respect to individual members of the class which would as a practical matter be dis-

---

1. The paucity of record evidence may in part be explained by the fact that plaintiffs pleaded and moved for certification under allegations that invoked only Rule 52.08(b)(1), yet the trial court certified the class under Rule 52.08(b)(3) without giving Weber an opportu-

nity to brief or develop a record in opposition to certification under that provision.

2. Rule 52.08(b)(2), which provides a third category where class actions can be maintained, is not at issue in this case.

positive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

\* \* \* \*

■ (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The burden to establish that the action complies with the requirements of Rule 52.08(b) rests entirely with the plaintiff.

### B. Allegations of Class Action Status and Supporting Record

Plaintiffs' motion for class certification consisted of a single page, with one substantive paragraph stating that "this action is proper for certification as a class action on all issues for the reasons set forth in plaintiffs' Third Amended Petition attached hereto as Exhibit A and the affidavits attached hereto as exhibits B through F."

The four-page petition alleges that the named plaintiffs live near Weber's quarry and that they experience vibrations constituting a nuisance caused by the quarry's blasting operations. It also includes stock allegations that the action meets the Rule 52.08(a) prerequisites for class certification, i.e.: the number of property owners is so numerous that joinder is impractical;

the class would be adequately represented by the named plaintiffs; the named plaintiffs' claims are typical of those of the class, and each class member's claim presents two common issues of fact: whether the defendants maintained a nuisance and whether the member sustained at least nominal damages. The petition also paraphrases Rule 52.08(b)(1) and alleges that a class should be certified because "the prosecution of separate actions by the individual members of the class and the defense of separate actions against the individual members of the class would create a strong risk of inconsistent and varying adjudications of the common questions of law and fact." Facts supporting these allegations are not set out in the petition itself.

The class certification motion also refers to five supporting affidavits, one from each of the named plaintiffs. These plaintiffs aver that they live within one-quarter to one-third mile of the quarry and that they felt vibrations from the blasting at the quarry and were injured thereby.[3] Based on the motion, petition, and accompanying affidavits, the trial court conducted an evidentiary hearing. At the evidentiary hearing, two witnesses testified: the lead plaintiff, Peggy Green,[4] and David Knieriem, one of the attorneys for the putative class.

### 1. Peggy Green's Testimony

Ms. Green first noticed the blasting activity in October 1999, and her neighbors informed her that the blasting originated in Weber's quarry. According to Ms. Green, the number of blasts ranged between five and ten per week. After becoming aware of the blasting, Ms. Green

---

**3.** One affiant did not state how close he lived to the quarry but his address is just down the street from another affiant who says he lives one-quarter mile from the quarry.

**4.** Ms. Green divorced from her husband after the initiation of this lawsuit and has now

returned to using her maiden name of Gianino. Since the caption of this case bears her name as it was when the petition was filed, in the interests of clarity the Court will refer to her as Ms. Green.

began to canvass the neighborhood to learn whether others were similarly affected by the blasting. She called two meetings, one in her subdivision, which has approximately 410 homes, and one in another subdivision, with approximately 300 homes, to address the issues associated with the blasting. Ms. Green also attended meetings of the O'Fallon city council and the St. Charles county commission to raise concerns regarding the blasting. She testified that she spoke to hundreds of individuals in the community regarding this blasting.

At the time of the hearing, however, Ms. Green had moved from her home in the subdivision to another residence much farther from the quarry. Although she believed that her new home was within a two-mile radius of the quarry, she stated that she did not feel any vibrations in her new home and that her claimed class membership derives from her prior residence, which was within one-quarter mile of the quarry.

Ms. Green did not suggest that she had obtained any scientific or statistical evidence or geographic survey as to how far the vibrations would travel in the varying ground conditions surrounding the quarry. Nor did Ms. Green attempt to determine how far in each direction the vibrations traveled by conducting a survey of residents within set distances from the quarry. Rather, she explained, the class definition was offered as those who owned homes within a two-mile radius of the quarry because she had received telephone calls from people to the north and east of the quarry who said they felt vibrations. Ms. Green spoke to one person who lived about two miles away in an unspecified direction.

She also said that Fizey Road, a thoroughfare in the community, was approximately 2 miles from the quarry. During cross-examination, Ms. Green agreed that she did not have any personal information regarding whether the blast could be felt at two miles distance, nor did she identify anyone who lives at that distance who was affected by the blasting.

### 2. Mr. Knierem's Testimony

David Knierem, one of the counsel for the proposed class, testified that he personally attended some meetings called to address blasting issues in the community. The meetings he attended had over 150 persons present. Based on Mr. Knierem's understanding of the community, he testified that the class would include approximately 1500 homeowners.[5] Counsel also, over objection, offered the affidavit of a person who averred that he lives 1.6 miles in an unspecified direction from the quarry and that he had suffered damage from vibrations.

### 3. Trial Court's Class Certification Order

Following the hearing, the trial court granted plaintiffs' motion for class certification. Although the plaintiffs sought—and the defendant opposed—class certification only under Rule 52.08(b)(1), the trial court did not certify the class under that provision. The trial court noted that *if* the plaintiffs' allegations that their claims would be subject to inconsistent or varying adjudications were true, "this would satisfy Rule 52.08(b)(1)." But it did not address whether plaintiffs had met their burden of proof, and indeed, no evidence or even supporting argument was made below on this issue.

---

**5.** Mr. Knierem also testified concerning the adequacy of the representation that counsel will afford the class if it is certified. While the adequacy of counsel was contested below, it is not an issue on appeal, and the details of counsels' practice and experience, therefore, are not further discussed.

Instead, the trial court determined that, "[a] fair reading of the petition also supports application of subsection [52.08(b) ](3)."[6] Although the court said that it did not consider any of the affidavits filed by the plaintiffs, it nonetheless found that two common issues—the reasonableness of Weber's blasting and whether the blasting substantially impaired the plaintiff class members' right to peaceful enjoyment of their property—predominated, making a class action superior to other methods of adjudication. The class as certified below consists of "residential homeowners . . . who owned homes within two miles of Defendant's quarry . . . for the five years preceding the date the petition was filed."

Weber sought and received permission to file an interlocutory appeal of the trial court's class certification order pursuant to section 512.020(3), RSMo Supp.2007. After decision by the court of appeals, this Court granted transfer. Mo. Const. art. V, sec. 10.

## II. STANDARD OF REVIEW

Where, as here, the court of appeals permits an interlocutory appeal of an order of class certification and reaches the merits, review in this Court is properly sought by filing an application for transfer, as occurred here. *State ex rel. The Coca-Cola Company v. Nixon,* 249 S.W.3d 855, 861 (Mo. banc 2008). Review of a class certification order is for an abuse of discretion. *See State ex rel. Union Planters Bank, N.A. v. Kendrick,* 142 S.W.3d 729, 735 (Mo. banc 2004). A circuit court abuses its discretion if "its order is clearly against the logic of the circumstance, is arbitrary and unreasonable, and indicates a lack of careful consideration." *State ex rel. Ford Motor Co. v. Messina,* 71 S.W.3d 602, 607 (Mo. banc 2002).

## III. CERTIFICATION OF THE CLASS AS DEFINED WAS AN ABUSE OF DISCRETION

Weber claims on appeal that class certification was an abuse of discretion for the following three reasons: (1) common issues do not predominate over individual issues as required by Rule 52.08(b)(3); (2) the class definition was defective because the plaintiffs did not provide a sufficient basis to draw the class boundary at two miles; and (3) the plaintiffs failed to show that individual lawsuits will result in a risk of inconsistent adjudications as required by Rule 52.08(b)(1). The Court addresses each contention.

### A. Common Issues of Law and Fact Can Predominate Sufficiently to Support a Nuisance Claim under Rule 52.08(b)(3)

Although the class certification decision is independent of the ultimate merits of the lawsuit, the applicable substantive law is relevant to a meaningful determination of the certification issues. *See Meyer ex rel. Coplin v. Fluor Corp.,* 220 S.W.3d 712, 716 (Mo. banc 2007) ("a court must understand the . . . applicable substantive law to make a meaningful determination of the certification issues"). In this case, nuisance provides the applicable substantive law. "Nuisance is the unreasonable, unusual, or unnatural use of one's property so that it substantially im-

---

6. Plaintiffs note that they did allege in their petition that there are common issues. Of course, while proof of *some* common issues, along with proof of numerosity, typicality and adequacy of representation, are necessary and indispensable predicates to certification of a class under any subsection of Rule 52.08(b), the requirement of proof that common issues predominate in order to certify a class under Rule 52.08(b)(3) *is a distinct issue.* Numerosity, typicality, adequacy of counsel, or the typicality of named plaintiffs are not raised on appeal.

pairs the right of another to peacefully enjoy his property." *Frank v. Environmental Sanitation Mgt., Inc.*, 687 S.W.2d 876, 880 (Mo. banc 1985). "The law of nuisance recognizes two conflicting rights: property owners have a right to control their land and use it to benefit their best interests; the public and neighboring land owners have a right to prevent unreasonable use that substantially impairs the peaceful use and enjoyment of other land." *Id.*

Weber claims that common issues cannot predominate where, as here, plaintiffs sue for a private nuisance, because the proof necessary to present each plaintiff's claim will necessarily vary in light of the elements that must be proved to submit a private nuisance claim to the jury.

The verdict directing instruction for private nuisance claims, MAI 22.06, provides that the jury must find for plaintiff if it believes:

First, plaintiff used his property as a residence, and

Second, (here describe nuisance such as 'defendant operated a slaughter house in close proximity to plaintiff's residence') and

Third, (here describe the injury such as 'ill-smelling odors escaped from defendant's premises onto plaintiff's property and this substantially impaired plaintiff's use of his property,') and

Fourth, such use by defendant of his property was unreasonable.

Weber asserts that this instruction will require individual proof that each plaintiff used its property as a residence and that the effects of the blasting were felt on and substantially impaired the use of each

plaintiff's property to the extent that it made the blasting unreasonable as to that specific plaintiff.

Here, the trial court found two issues common to all members of the class that predominate over other issues: (1) whether Weber's use of his land for blasting was unreasonable and (2) whether the blasting activity substantially impaired plaintiffs' use and enjoyment of their property.

This Court agrees that upon a proper showing and class definition, such issues could be found to predominate in a claim based on nuisance. The jury can make a determination as to whether and when defendant began the blasting or level of blasting that is alleged to be a nuisance and whether that blasting was unreasonable as to persons within the class. It may determine that it was reasonable or unreasonable as to all members of the plaintiff class; it may determine that the use of the property was reasonable as to those who felt vibrations of a certain magnitude, but was unreasonable as to those who felt vibrations of a greater magnitude. The common question of the reasonableness of the blasting would pervade every class member's claim.[7]

■ Although a single common issue that predominates over other individual issues can satisfy the predominance requirement of Rule 52.08(b)(3), *see State ex rel. American Family Mut. Ins. Co. v. Clark*, 106 S.W.3d 483, 488 (Mo. banc 2003), the trial court identified a second issue here that also predominates over individual issues: whether the blasting substantially impaired the plaintiffs' use and enjoyment of their property. While the

7. The fact that Weber's blasting operations were ongoing for many years prior to the initiation of suit will also be a consideration in the eventual determination of whether its use of the land is reasonable, "especially if the owner's use [of the land] is reasonably apparent to the neighbor at the time the neighbor purchases the property." *Edmunds v. Sigma Chapter of Alpha Kappa*, 87 S.W.3d 21, 29 (Mo.App. W.D.2002).

nature and extent of impairment of an individual plaintiffs' property would not be a common question,[8] in a private nuisance action plaintiffs are entitled to recover nominal damages if they prove the existence of the nuisance. *See Smiths v. McConathy*, 11 Mo. 517, 522 (1848) ("if a private nuisance be alleged and proved, the plaintiff is entitled to recover nominal damages at least"); *Wallace v. Grasso*, 119 S.W.3d 567, 579 (Mo.App. E.D.2003) ("a plaintiff is entitled to nominal damages if he proves nuisance but fails to, or cannot, prove actual damage").

As to persons within the class, then, the issue of whether this blasting substantially impairs the use and enjoyment of their property in a manner sufficient to entitle them to nominal damages is at least potentially amenable to determination at a common level, and the availability of nominal damages would be common to all members of the class. For these reasons, this Court agrees with the trial court that there are common issues that could predominate in this private nuisance action.[9]

*B. The Record Below Does Not Support Certification of a Class of Persons Living Within a Two Mile Radius of the Quarry under Rule 52.08(b)(3)*

 Weber's second objection to the trial court's certification order is that the record below does not support the class definition. Specifically, Weber contends that the evidence adduced before the trial court does not support setting the class boundary at two miles in every direction from the quarry. This Court agrees with Weber that the minimal record below does not support this placement of the class boundary, so the class definition fails.

 As this Court recently noted in *State ex rel. The Coca–Cola Company v. Nixon*, 249 S.W.3d 855, 861 (Mo. banc 2008), "a properly defined class is necessary to realize both the protections and benefits for which the class action device was created." The primary concern underlying class definition is to avoid certification of "vague, amorphous, or indeterminate" classes. *Id.*, 249 S.W.3d at 861. "A properly defined class facilitates the identification of individuals affected by the litigation from the outset of the case to provide notice and an opportunity to opt out of the class." *Dale v. DaimlerChrysler Corp.*, 204 S.W.3d 151, 178 (Mo.App. W.D.

---

**8.** Should some class members seek to recover actual damages from the nuisance, the nature and amount of those damages would be subject to individualized proof, but the need for inquiry as to individual damages does not preclude a finding that the common issues predominate. *Meyer ex rel. Coplin*, 220 S.W.3d at 716.

**9.** Weber notes but does not raise as a separate point relied on that the trial court certified a class pursuant to Rule 52.08(b)(3) when the plaintiffs only sought certification under Rule 52.08(b)(1). These two rules provide very different bases for certification, and substantially different proof would be required to support certification under Rule 52.08(b)(1) (proof that inconsistent results would result if the cases were tried separately) than under Rule 52.08(b)(3) (proof that common issues of fact and law would predominate even where the results would not be inconsistent if the trials were separate). Only the issue of whether inconsistent results would obtain was briefed by defendant, as only that was pleaded. The evidence at the hearing was factual and did not address the predominance issue that is the focus of certification under Rule 52.08(b)(3) or the issue of inconsistency. The trial court, therefore, had no guidance from the parties on the predominance issue, nor did defendant have an opportunity to try to demonstrate why common issues do not predominate as a factual matter beyond the showing made in regard to Rule 52.08(a) that it did not believe there were common issues. The Court presumes that on remand certification will only be considered on grounds pleaded now or by amendment and as to which briefing is permitted.

2006). In addition, where a putative class representative seeks to certify a class within certain geographic boundaries, the establishment of those boundaries must "bear a reasonable relationship to the evidence of record to date." *Doyle v. Fluor Corp.*, 199 S.W.3d 784, 791 (Mo.App. E.D. 2006).

■ Applying these principles here, it is evident that the record does not support the class definition adopted by the trial court. Although it certified a class of all those residential homeowners within a two-mile radius of the quarry, the only evidence before the court was that the named plaintiffs, who each lived within one-quarter to one-third mile to the south of—and across Interstate 70 from—the quarry, experienced vibrations and shaking from the blasting. The only evidence that the plaintiffs presented to the trial court regarding whether the vibrations could be felt two miles from the quarry was a statement from Ms. Green that she "received phone calls from as far as two miles away."[10] Upon further inquiry from defense counsel, she clearly testified that she has no personal knowledge whether the blasts could even be felt at a distance of two miles from the quarry. Here is her pertinent testimony:

Q: [Have you ever been] two miles north at the time of the blast?

A: Can't say I have.

Q: Have you ever stood two miles to the south at the time of the blast?

A: No, sir, I did not.

Q: Or to the east or the west?

A: No, sir, I did not.

Q: So you don't have any personal information as to how a blast would feel at that distance?

A: No sir, I do not.

Ms. Green also testified that, although she believes her new home may be within the two-mile radius from Weber's blasting operations, she does not feel any vibrations at her current residence. When asked further about the two mile distance, she stated that "Fizey Road is two miles away," and it can be inferred from her testimony that she received telephone calls from residents somewhere near Fizey Road.

In the face of this testimony, it was an abuse of discretion to define the class as including all those residential homeowners within two miles of Weber's quarry. The trial court plainly lacked an evidentiary basis on which to set the class boundary at two miles in all directions from the quarry. *Compare Doyle v. Fluor Corp.*, 199 S.W.3d 784, 791 (Mo.App. E.D.2006) (affirming geographically defined class where experts testified at a class certification hearing that "all of the properties in the class definition had been contaminated" by defendants). Clearly, the record relied on by the court below did not support the certification of a class that encompassed more than those living in the direction and at approximately the distance from the quarry that plaintiffs lived.

■ The dearth of evidence to support the geographic boundaries of the class cer-

---

10. The plaintiffs also presented an affidavit of a person whose residence was 1.6 miles in an unspecified direction from the blasting site who averred that it substantially impaired the use of his home, but the trial court in its order expressly disavowed reliance on this or any of the affidavits in reaching its conclusion to certify the class. Although affidavits are clearly admissible upon motions for class cer-

tification, *see Senn v. Manchester Bank of St. Louis*, 583 S.W.2d 119 (Mo. banc 1979) ("It is clear that the consideration of affidavits with motions is well established in custom and usage and does not deprive a defendant of any rights ..."), *Senn* also specifically held that whether to admit or rely upon affidavits in deciding a motion is within the discretion of the trial court.

tified is particularly troublesome where private nuisance is alleged because of the presumption in favor of nominal damages upon proof of a nuisance. *See Smiths*, 11 Mo. at 522; *Wallace*, 119 S.W.3d at 579. Under most theories, where nominal damages are not presumed, there would be little risk that a class member who suffered no damages would recover, as actual damages would have to be proved. Because private nuisance permits recovery of nominal damages in all cases regardless of proof of actual damages, the absence of evidence to support the class' geographic boundaries presents real risks that Weber could have to pay damages to a homeowner in the class who was completely unaffected by its blasting. Absent *some* evidence that the defendant's blasting could be felt at a distance of two miles in each direction, it was an abuse of discretion to define the class to include all homeowners within a two-mile radius.[11]

*C. The Trial Court Did Not Certify a Class Under Rule 52.08(b)(1)(A) and the Record Would Not Support Such Certification*

■ Weber's final argument is that the trial court erred to the extent that its order can be read to certify a class under Rule 52.08(b)(1). Although the plaintiffs contend that such certification would have been proper, they concede that the trial court did not certify a class under Rule 52.08(b)(1). This Court agrees that the trial court did not certify this case as a class action under Rule 52.08(b)(1), and it also concludes that the record adduced before the trial court would not support such a certification.

Rule 52.08(b)(1) is concerned with the risk of inconsistent or varying determinations that could either "establish incompatible standards for the party opposing the class" or "be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests." Rule 52.08(b)(1)(A) and (B). As plaintiffs only seek money damages in this suit, and not injunctive relief, there is little risk that separate suits could establish "incompatible standards for the party opposing the class," and Rule 52.08(b)(1)(A) does not apply.

■ Similarly, Rule 52.08(b)(1)(B) does not apply here because a loss by one plaintiff in an individual nuisance suit would not impede the ability of a second plaintiff to pursue a separate action. Missouri follows the "narrow use of offensive collateral estoppel laid down in *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329–37, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)." *James v. Paul*, 49 S.W.3d 678, 685 n. 5 (Mo. banc 2001). Under that rule, no party can be bound by a judgment unless she was in privity with the parties to that judgment. *See Parklane Hosiery Co.*, 439 U.S. at 327 n. 7, 99 S.Ct. 645 ("It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard"). Therefore, the individual

---

**11.** Of course, some evidence that the blasting *could* be felt at that distance, though necessary to support the class definition, is not conclusive of the ultimate merits issue as to whether that blasting was a nuisance. "[T]he trial court has no authority to conduct an essentially binding preliminary inquiry into ultimate liability issues when it is making the threshold, procedural determination of class membership." *Vandyne v. Allied Mortgage* *Capital Corp.*, 242 S.W.3d 695, 697 (Mo. banc 2008). Indeed, if the trial court would have required every class member to have felt the vibrations from the blasting at the class certification stage, "such tentative findings, lacking [certain] safeguards, 'may color the subsequent proceedings and place an unfair burden on the defendant.'" *Id.* quoting *Craft v. Philip Morris Cos., Inc.*, 190 S.W.3d 368, 377 (Mo.App. E.D.2005).

homeowners will not be bound by judgments reached in individual cases, so Rule 52.08(b)(1)(B) does not apply.[12] No evidence or argument having been offered to show compliance with the provisions of Rule 52.08(b)(1), they simply are not applicable to the request for class certification.

## IV. CONCLUSION

For the reasons set forth above, this Court reverses the trial court's judgment certifying a class in this case and remands the case for further proceedings. As the plaintiffs did not seek certification pursuant to Rule 52.08(b)(3) in the trial court and the defendant was not afforded a clear opportunity to oppose such certification, the Court presumes that on remand certification will only be considered on grounds pleaded now or by amendment and as to which briefing is permitted.

All concur.

**12.** Rule 52.08(b)(1)(B) also could apply in cases where only a common or limited fund is available to pay members of the class, *see, e.g., Dickinson v. Burnham,* 197 F.2d 973 (2d Cir.1952) (permitting class action where available fund to satisfy claims was limited), but that is not alleged to be the case here.