Sherry SMITH and Donna Triplett,
Plaintiffs–Respondents,

v.

MISSOURI HIGHWAYS AND TRANS-
PORTATION COMMISSION, De-
fendant–Appellant.

No. SD 31590.

Missouri Court of Appeals,
Southern District,
Division Two.

April 30, 2012.

Motion for Rehearing or Reconsideration
and
Transfer Denied May 21, 2012.

Application for Transfer
Denied Aug. 14, 2012.

Kevin P. Schnurbusch, St. Louis, MO, for Appellant.

William K. Holland, St. Louis, MO Division II, for Respondents.

JEFFREY W. BATES, Judge.

This is an interlocutory appeal from an order granting class action certification. *See* Rule 84.035; § 512.020(3).[1] The Missouri Highways and Transportation Commission (the Commission) contends the trial court abused its discretion in certifying a class action with a plaintiff class consisting of all persons who sustained injuries or property damage during a five-year period as a result of wet-pavement crashes on a 1.3–mile section of Interstate 44 in Phelps County, Missouri (the I–44 section). We agree.

## I. Factual and Procedural Background

On October 17, 2006, Sherry Smith (Smith) was involved in an automobile accident on the I–44 section. The road was wet, and Smith lost control of her pick-up. After the truck spun out of control, it left the roadway and collided with another vehicle that was passing on an outer road. Smith suffered injuries and had to be taken to a nearby hospital. On March 19, 2009, she filed a petition against the Commission to recover damages.

On July 14, 2009, Donna Triplett (Triplett) was a passenger in a vehicle on the I–44 section when the driver lost control of the vehicle on wet pavement. The car left the roadway and collided with the median barrier. Triplett sustained minor injuries that were treated at the scene.

On October 26, 2010, Triplett filed a motion to intervene in Smith's pending case against the Commission. She also sought certification of the action as a class action under Rule 52.08. The plaintiff class would be all those who suffered damages "arising from wet pavement, loss-of-control accidents" on the I–44 section.

On December 10, 2010, the trial court held a hearing regarding the motion to intervene and certify the class action. The attorney representing Smith and Triplett presented four exhibits. Exhibit 1 was a packet of documents containing four accident reports prepared by the Missouri State Highway Patrol (MSHP). In addition to the reports regarding the Smith and Triplett accidents, there were two reports regarding accidents which involved an out-of-control car and a semi on the I–44 section. In the first of those reports, the driver of the car lost control and hit the semi. In the second, the semi abruptly changed lanes and the driver of the car lost control when he tapped his brakes to avoid the semi. Exhibit 2 contained two photographs of the 60 mile-per-hour speed limit sign at the beginning of the I–44 section. Exhibit 3 was a database maintained by the MSHP containing summaries of all the accidents "for the years 2006, 2007, 2008, 2009 and 2010." Exhibits 3A and 3B were printed summaries from Exhibit 3 which, according to the attorney representing Smith and Triplett, explained each accident that occurred on the I–44 section during wet weather conditions. Exhibit 4 was the manual explaining how

---

1. All references to rules are to Missouri Court Rules (2011). All references to statutes are to RSMo Cum.Supp. (2008).

to read the database printouts from Exhibit 3.

Exhibits 3A and 3B list factors surrounding each accident including, *inter alia*, the weather, road conditions, and other contributing circumstances. Most of the accidents which fall within the class definition involved at least one other contributing circumstance. For example, two of the crashes involved vehicle defects, two of the crashes involved impaired drivers, 19 of the crashes involved exceeding the speed limit, and 17 of the crashes involved other driver actions such as an improper lane change, following too closely, or failing to yield. Over 100 crashes involved drivers traveling at speeds that were too fast for the conditions. Some of the crashes occurred while it was raining, but over 60 occurred when it was not raining.

After introducing the exhibits, the attorney representing Smith and Triplett read portions of two depositions into the record. Those depositions were given by employees of the Missouri Department of Transportation and revealed that: (1) the speed limit sign on the I–44 section had been moved in 2006; and (2) that no repaving of the I–44 section had been completed since 2003 even though a contiguous section had been repaved in 2006.

Based on the above evidence and the arguments of the attorneys, the trial court permitted Triplett to intervene in the action and certified the case as a class action. The trial court found that "[c]ommon questions of fact exist as to whether the pavement surface lacked proper skid resistance and was in a dangerous condition at the time of the Smith and Triplett crashes, and whether their injuries directly resulted from that condition." The court also found that those two issues predominated over the other issues in individual cases. The court then ruled that "[t]he class shall be composed of all persons who have sustained injuries or damages as a result of wet pavement crashes on a 1.3 mile section of eastbound I–44, Phelps County, beginning at or about the relocated 60 mph speed limit sign near the west city limits of Rolla and ending at or about 100 feet past the west junction of Business Loop 44, within five years preceding the date of this order."

The Commission sought review of the certification order under Rule 82.035, which this Court permitted.

## II. Standard of Review

Trial courts have discretion in determining whether an action should proceed under Rule 52.08. *State ex rel. McKeage v. Cordonnier,* 357 S.W.3d 597, 599 (Mo. banc 2012). "This Court reviews an order granting or denying class certification for abuse of discretion." *Meyer ex rel Coplin v. Fluor Corp.,* 220 S.W.3d 712, 715 (Mo. banc 2007). "An abuse of discretion occurs if the circuit court's decision 'is clearly against the logic of the circumstance, is arbitrary and unreasonable, and indicates a lack of careful consideration.' " *McKeage,* 357 S.W.3d at 599 (citation omitted). Furthermore, "[t]he party seeking class certification has the burden of proof." *Hope v. Nissan North America, Inc.,* 353 S.W.3d 68, 74 (Mo.App.2011). "This burden is satisfied if there is evidence in the record, which if taken as true, would satisfy each and every requirement of the rule." *Id.* "[I]f the record does not demonstrate that the requisites for class action have been met, the trial court has abused its discretion." *Dale v. DaimlerChrysler Corp.,* 204 S.W.3d 151, 163 (Mo.App.2006).

## III. Discussion and Decision

The Commission asserts six points, each addressing a separate requirement under Rule 52.08. As the trial court's decision must be reversed if any of the require-

ments of the rule are not met, we address only Point III, which we find to be dispositive. In Point III, the Commission argues that Smith and Triplett failed to prove that the common issues predominated over the individual issues in the case. We agree.

The requirement that the common issues predominate over the individual issues is found in Rule 52.08(b)(3). Under that provision, the trial court may certify a case as a class action if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* This rule is commonly known as the predominance requirement, and it "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).[2] While the predominance requirement is similar to the commonality requirement of Rule 52.08(a), the test for predominance "is far more demanding." *Id.* at 624, 117 S.Ct. 2231; *Dale,* 204 S.W.3d at 175. "The 'predominance' requirement ... does not demand that every single issue in the case be common to all the class members, but only that there are substantial common issues which 'predominate' over the individual issues." *McKeage,* 357 S.W.3d at 600. Still, "[t]he fundamental question is whether the group aspiring to class status is seeking to remedy a common legal grievance." *Dale,* 204 S.W.3d at 175. As the United States Supreme Court noted in *Wal–Mart Stores, Inc. v. Dukes,* —— U.S. ——, 131 S.Ct. 2541, 180 L.Ed.2d 374

(2011), what really matters in class certification is not the raising of common questions, but the ability of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. *Id.* at 2551.

"The predominance requirement explicitly requires a comparison between common issues and individual issues in order to ascertain whether the common issues predominate, and thus requires the Court to identify the common issues and the individual issues presented by the case." *In re Bisphenol–A (BPA) Polycarbonate Plastic Products Liability Litigation,* 276 F.R.D. 336, 340 (W.D.Mo.2011). "The determination of whether a question is a common or an individual question ... is based on the nature of the evidence that will suffice to resolve the question." *Dale,* 204 S.W.3d at 175. If the evidence needed to prevail on the question "varies from member to member, then [the question] is an individual question." *Id.* If, on the other hand, "the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Id.* This comparison is "independent of the ultimate merits of the lawsuit," but nevertheless to complete such a comparison successfully, "a court must understand the ... applicable substantive law in order to make a meaningful determination of the certification issues." *Meyer ex rel. Coplin v. Fluor Corp.,* 220 S.W.3d 712, 716 (Mo. banc 2007) (citation omitted).

Because of the fact-specific nature of causation, personal injury cases, even those involving large numbers of plaintiffs, are rarely amenable to class action treatment. *See Amchem Products,* 521 U.S. at 616, 117 S.Ct. 2231. Plaintiffs in such

**2.** Rule 52.08 "is the same as Rule 23 of the Federal Rules of Civil Procedure." Committee Note–1974, Rule 52.08. For this reason, "federal interpretations of Rule 23 may be considered in interpreting Rule 52.08." *State ex rel. Union Planters Bank, N.A. v. Kendrick,* 142 S.W.3d 729, 735 n. 5 (Mo. banc 2004); *Dale,* 204 S.W.3d at 161.

cases have "a significant interest in individually controlling" their cases, and there are often individual issues of causation. *Id.* For example, in *Amchem,* the named plaintiffs sought to certify a class consisting of all the people who had been exposed to asbestos. *Id.* at 597, 117 S.Ct. 2231. The United States Supreme Court found that there was no predominance because the causation analysis in any one case would depend on many factors that were different in each case, such as varying levels of exposure and other possible causes for the plaintiffs' diseases. *Id.* at 624, 117 S.Ct. 2231; *see Steering Committee v. Exxon Mobil Corp.,* 461 F.3d 598, 602 (5th Cir.2006); *In re Tetracycline Cases,* 107 F.R.D. 719, 724 (W.D.Mo.1985).

■■■■ Here, similarly, resolution of each plaintiff's claim will require an individual assessment of causation. To succeed on their claim against the Commission, the plaintiffs must prove that the I–44 section was in a dangerous condition, that their injuries directly resulted from the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the type of harm the members suffered, and that the public entity had actual or constructive notice of the dangerous condition in time to have acted. *See Lampe v. Taylor,* 338 S.W.3d 350, 357 (Mo.App.2011).[3] "The question of whether the dangerous condition was the direct cause of the accident is the same as whether it was the proximate cause." *Id.* A defendant's negligence is a proximate cause of an injury if the injury is the natural and probable consequence of the defendant's negligence. *Id.* "Determination of substantiality and proximity of the causal relationship between negligence and injury is dependent upon the particular facts of each case and it is seldom that one decision controls another." *Buck v. Union Elec. Co.,* 887 S.W.2d 430, 433 (Mo.App. 1994). Furthermore, in Missouri, evidence of concurrent negligence warrants an apportionment of fault between the responsible parties. *Lampe,* 338 S.W.3d at 358.

■■■■ In automobile cases, excessive speed is often an issue. "The mere fact that one is not exceeding the speed limit does not preclude a finding of excessive speed." *French v. Missouri Highway and Transp. Comm'n,* 908 S.W.2d 146, 151 (Mo.App.1995). "Whether a particular speed is excessive depends on the circumstances and conditions existing at the time of the collision." *Bank of America, N.A. v. Stevens,* 83 S.W.3d 47, 54 (Mo.App. 2002). Such circumstances include not only the condition of the road, but also the lighting available, the driver's familiarity with the road, and the mechanical condition of the car. *French,* 908 S.W.2d at 151; *Bank of America,* 83 S.W.3d at 54.

In the present case, there are too many variables from accident to accident, and individual evidence would have to be presented regarding causation for almost every case. The exhibits offered by Smith and Triplett show that all but four of the accidents had some other contributing circumstance. The most common contributing circumstance involved the speed of one of the vehicles involved: over 100 incidents involved a vehicle traveling too fast for the conditions, and 19 incidents involved a vehicle exceeding the speed limit. The determination of whether the speed was too fast for the conditions depends on much

---

3. The initial pleading is not part of the record on appeal because of the procedural posture of this case, but the nature of the action is readily inferred from the record. Triplett used the term "dangerous condition" in her motion to intervene, suggesting reliance on § 537.600. The existence of the Commission as the primary defendant confirms this inference.

more than the condition of the roadway and will be specific to each accident. *French*, 908 S.W.2d at 151; *Bank of America*, 83 S.W.3d at 54. Moreover, other actions on the part of the driver contributed to the accident in 17 incidents, including two drivers using drugs. These numbers show that in many, if not most of the accidents, causation will be substantially determined on the basis of these other contributing circumstances. These individual issues of causation would overwhelm the common issue of whether the road was in a defective condition and whether that condition was a cause of the accident. Consequently, the predominance requirement was not met because a class action proceeding is not apt to generate common answers that are apt to drive the resolution of the proceeding. *Wal–Mart Stores, Inc. v. Dukes*, —— U.S. ——, 131 S.Ct. 2541,2551, 180 L.Ed.2d 374(2011).

The arguments of Smith and Triplett do not convince us otherwise. They first argue that this case is not like the cases cited by the Commission, but rather like *Watson v. Shell Oil Company*, 979 F.2d 1014 (5th Cir.1992), and *Green v. Fred Weber, Inc.*, 254 S.W.3d 874 (Mo. banc 2008). In our view, however, neither of those cases involve situations requiring the court to engage in multiple causation determinations. *Watson* involved a number of injuries arising out of a single explosion. *Watson*, 979 F.2d at 1016–17. Although a single explosion may have many causes, all of those causes would be common to the members of the plaintiff class. Here, in contrast, the court would have to examine over 100 different accidents and determine whether the accidents were caused by the road conditions, the negligence of the drivers, the negligence of other drivers, or a combination of all three. *Green* is superficially more similar because it involved a nuisance claim against a quarry based on a number of blasting incidents. *Green*, 254

S.W.3d at 881. In each of those incidents, however, the defendant's actions affected each of the plaintiff class members in the same way. *Id.* at 882. Here, without inquiry into the other variables attending each crash, it is not possible to determine whether the defendant's actions affected each of the plaintiff class members in the same way. Thus, a class action proceeding would not yield a common answer on causation that would be apt to drive resolution of the litigation. *Wal–Mart Stores*, 131 S.Ct. at 2551.

Smith and Triplett also argue that the drivers' speeds were all the same because they all occurred in a location where the speed limit was 60 miles per hour and that the additional factors such as the type of tires and the actions of the various drivers can be assumed to be the same because there were so many fewer crashes on the west-bound section of the road. The first argument ignores the evidence discussed above regarding the number of accidents listed as having speed as a contributing factor, especially considering the fact that 19 of those accidents involved exceeding the speed limit. The second argument is mere speculation.

Finally, Smith and Triplett cite *State ex rel. American Family Mut. Ins. Co. v. Clark*, 106 S.W.3d 483 (Mo. banc 2003), for the proposition that our Supreme Court has rejected an argument similar to the argument raised by the Commission in this appeal. The problem with relying on *Clark* in the present case is that the underlying claims in the Clark case involved alleged breaches of contracts to provide insurance coverage. *Id.* at 487–88. Thus, the evidence needed to prove the claims revolved around the standard contract language and the company's policies in handling claims. *Id.* at 488–89. Those issues were the same across the entire class. *Id.* Here, in contrast, the issue of causation cannot be finally determined solely by

looking at the Commission's conduct. Rather, the court will have to look at the other circumstances surrounding the crashes to determine proximate cause. That will require individual evidence in every case. *Clark* does not control the outcome of the present case because the evidence needed to prove the underlying claims in this case is different from the evidence needed to prove the underlying claims in *Clark*.

The order certifying the underlying class action is reversed, and the cause is remanded for further proceedings. On remand, the trial court is instructed to vacate the class certification order.

SCOTT, J., and FRANCIS, P.J., Concur.